# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WALTER A. BERNARD, and<br>WYNTON A. BERNARD<br><br><br><br><br><br>Plaintiffs,<br><br>v.<br><br><br><br>PHILIP A. IGNELZI, in his individual capacity as a citizen, his judicial capacity, and by and through his actions on behalf of ALLEGHENY COUNTY; ALLEGHENY COUNTY, a government entity; ORLANDO HARPER, in his individual capacity and in his official capacity, by and through his actions on behalf of ALLEGHENY COUNTY; MARY C. MCGINLEY ; and<br>JOHN DOES 1 through 20, Inclusive,<br><br>Defendants. | Case No. 2:23-CV-01463-WSS<br><br>Honorable Judge William S. Stickman<br><br>**JURY TRIAL DEMANDED**<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES BY:**<br>**1. DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**2. UNLAWFUL SEIZURE-DETENTION & ARREST- (42 U.S.C. § 1983)**<br><br>**3. UNLAWFUL SEIZURE – FAILURE TO SUPERVISE (42 U.S.C. § 1983)**<br><br>**4. UNLAWFUL SEARCH - (42 U.S.C. § 1983)**<br><br>**5. DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS**<br><br>**6. VIOLATION OF RIGHT TO EQUAL PROTECTION- 14th AMENDMENT – CONSPIRACY (42 U.S.C. § 1983)**<br><br>**7. FAILURE TO INTERVENE**<br><br>**8. SUBSTANTIVE DUE PROCESS/INTERFERENCE WITH FAMILIAL RELATIONS - (42 U.S.C. § 1983)** |

**9. VIOLATION OF SIXTH AMENDMENT RIGHT TO COUNSEL**

**10. FALSE IMPRISONMENT - (42 U.S.C. § 1983)**

**11. VIOLATION OF THIRTEENTH AMENDMENT (42 U.S.C. § 1983)**

**12. NEGLIGENCE- NEGLIGENT ENTRUSTMENT, HIRING, SUPERVISION, AND/OR RETENTION (42 U.S.C. § 1983)**

**13. *MONELL* LIABILITY— RATIFICATION; INADEQUATE TRAINING; and UNCONSTITUTIONAL CUSTOM, PRACTICE, AND POLICY - (42 U.S.C. § 1983)**

**14. CONSPIRACY TO VIOLATE CIVIL RIGHTS-PRIVATE PARTY (42 U.S.C.1985(2))**

**15. FAILURE TO INTERVENE – (42 U.S.C. § 1986)**

**16. BATTERY/ASSAULT - (42 U.S.C. § 1983)**

**17. VIOLATION WITH FIRST AMENDMENT RIGHT TO COMMUNICATE - (42 U.S.C. § 1983)**

**18. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**19. ABUSE OF PROCESS- (42 U.S.C. § 1983)**

**DEMAND FOR JURY TRIAL**

## INTRODUCTION

1.      This matter involves continuous actions by Defendant PHILIP IGNELZI when acting in his individual capacity, his judicial capacity, and when acting by and through the ALLEGHENY COUNTY absent authority to step outside of his jurisdiction when acting on his own, in his judicial capacity and on behalf of the COUNTY OF ALLEGHENY's jurisdiction.

2.      This action further involves Defendants ALLEGHENY COUNTY and ORLANDO HARPER's (a former warden for Allegheny County jail system) series of continuous actions in violation of multiple 42 U.S.C. §1983 protections.

3.      Plaintiffs WALTER AND WYNTON BERNARD seek monetary damages, as well as injunctive and declaratory relief, to remedy Defendants' violation of Plaintiffs' rights under the United States Constitution.

## THE PARTIES TO THE ACTION

4.      DEFENDANT PHILIP IGNELZI is a state judge for the Court of Common Pleas of Allegheny in the Commonwealth of Pennsylvania and assigned to the Civil Division. DEFENDANT MARY MCGINLEY is a state judge for the Court of Common Pleas of Allegheny County in the Commonwealth of Pennsylvania and assigned to the Civil Division.

5.      DEFENDANT ALLEGHENY COUNTY is a government entity located in the Commonwealth of Pennsylvania. DEFENDANT ORLANDO HARPER is an individual and a

3

former warden for ALLEGHENY COUNTY, and at all times relevant, hereto, was working for ALLEGENY COUNTY.  Defendant, ALLEGHENY COUNTY is a Pennsylvania municipal authority located within the Commonwealth of Pennsylvania and, at all times relevant hereto, was authorized and is responsible for overseeing the policies, procedure, and/or training employees within its various departments including the Allegheny County Jail and the Allegheny County Peace's Office ("Peace Office").

6.      Plaintiff, WALTER A. BERNARD ("Bernard") is an African American business owner, licensed attorney and retired professional football player.  Bernard is an adult individual and a citizen of the United States, residing in the County of Allegheny.  Bernard maintains law offices in both the Eastern District and Western District of Pennsylvania.

7.      Plaintiff, WYNTON A. BERNARD ("Wynton Bernard") is an African American business owner and current professional baseball player.  Wynton Bernard is an adult individual and citizen of the United States, residing in the County of Allegheny.

8.      At all relevant times hereafter mentioned, Ignelzi was acting under color of state law. Defendant Ignelzi is a "person" for purposes of 42 U.S.C. §1983, and an agent of Commonwealth of Pennsylvania. Ignelzi is sued in his official and individual capacity.  Ignelzi is sued for declaratory, injunctive and monetary relief.

9.      Plaintiffs are not aware of the true names of the DOE Defendants 1 through 20, and therefore sues each DOE Defendant by such fictitious names.  Plaintiffs will amend this complaint to state the true names and capacity of Does when such have been ascertained.

**JURISDICTION**

4

10.     This Honorable Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 as causes of action enumerated arising under the United States Constitution, treaties and laws of the United States.  The relief sought is authorized by the United States Constitution and by 42 U.S.C. §§ 1983 and 1988 for violations of protections guaranteed to them through the First, Fourth, Sixth, Thirteenth and Fourteenth Amendments of the Constitution.  Additionally, the relief sought is authorized under 42 U.S.C. §§1985 and 1986.

11.     This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

12.     Declaratory relief to grant all further relief necessary and proper is authorized under 28 U.S.C. §§ 2201 and 2202.

13.     Venue is proper in this Court according to 28 U.S.C. §§ 1391(a) and 1391(e)(1)(C) because venue is proper where a defendant in the action resides.  Events giving rise to the claims take place at the Fifth Judicial District Courts and the Allegheny County Jail in Pittsburgh, Pennsylvania.  A portion of the events arise from Defendant Philip Ignelzi in his individual capacity fraudulently acting as if under his official capacity to intimidate, harass, threaten and coerce Plaintiffs.

14.     Plaintiffs are owners of a family entertainment escape room business, Amaze Me LLC, ("Tenant"), that was 100% inoperable due to Covid-19 governmental restrictions.

15.     Tenant was sued by their landlord, 9795 Perry Highway Management Inc. ("Landlord") owned Richard Stern, when it confessed judgment in the Court of Common Pleas in the Commonwealth of Pennsylvania.  Plaintiffs were guarantors of the lease agreement between Landlord and Tenant.

16.     Tenant, while inoperable was sued by Landlord for the Possession of the premises and sued Plaintiffs as guarantors of the lease agreement between Landlord and Tenant. The lease agreement contained a clause that allowed Tenant to refrain from paying rent while being shut down due to factors outside of its control which was at dispute in their civil case before the Commonwealth of Pennsylvania.

## COMMON ALLEGATIONS TO THE CLAIMS

17.     Defendant, Judge Ignelzi, while acting under color of state law in the absence of jurisdiction has caused Plaintiff Walter Bernard to be: a) forcibly removed from his residence in the midst of physical threats; b)wrongfully arrested on two separate occasions; c) imprisoned for a total 20 days without probable cause; d) caused him to write a personal check for $80,000 after being incarcerated for 12 days without a hearing ; e) requiring proof of that check being cleared as a condition of his freedom and f) causing Walter Bernard to be incarcerated for 20 days relating to a civil matter.

18.     Defendant Judge Ignelzi has conspired with other governmental officials in achieving his desired result of violating Plaintiffs' civil rights.

19.     Plaintiff, Wynton Bernard is a Black professional baseball player and has played with various affiliate organizations within Major League Baseball.  Plaintiff, Wynton Bernard is the brother of Plaintiff, Walter Bernard and the two share the same residence.

20.     On the morning of May 3, 2023, while Plaintiff Wynton Bernard was traveling for one of his baseball games, Bernard was in Plaintiffs' residence prepping for the work day.  Bernard was startled when multiple officers converged onto Plaintiffs' residence and began continuously banging on Plaintiffs' front door.

21.     Bernard was threatened by peace officers of the Allegheny County Peace's Office that if he didn't open his front door, in a timely fashion that "*the situation was going to get worse*."

22.     During the unexpected visit to Plaintiffs' residence, County peace officers even left a voicemail on Bernard's personal cellphone that if Bernard didn't come to the door, Bernard was going to jail.

23.     While fearing for his family and his own safety from the armed law enforcement agents, Bernard attempted to deescalate the situation by eventually opening the front door.

24.     Bernard was subsequently arrested in front of neighbors, humiliated and placed in the back of a marked law enforcement vehicle.

25.     Bernard was arrested without law enforcement providing a copy of a warrant and the only explanation that was given to him by law enforcement as to his arrest was; "the Judge just wanted to see you."  Bernard, without having breakfast nor taking his necessary medication pursuant to his medical needs was immediately transported, jailed and placed in a cell with approximately five (5) other individuals for a substantial part of the morning.

26.     Bernard was subsequently handcuffed in shackles and embarrassingly escorted through the courthouse hallways despite having never been arrested, read his rights nor displaying any safety concerns.

27.     Bernard was brought before Defendant Ignelzi and remained shackled in the courtroom. Ignelzi knew that Bernard's client, Wynton Bernard, was not present in the courtroom.  However, Ignelzi mandated that Bernard, while concurrently being deprived of his liberty interest and in the absence of his client, was required to make a fifteen (15) minute decision with only two options if he wanted to gain freedom from his shackles.

28.     Bernard was required to: a) settle a pending civil case on behalf of himself and his client with no ability to negotiate the specific settlement terms; or b) relinquish Constitutionally protected documents of which the matter was pending before the Appellate State Court.

29.     Although Bernard was wrongfully arrested as a result of Ignelzi acting in absence of his jurisdiction, Ignelzi continued to direct law enforcement to arrest and incarcerate Plaintiffs Wynton Bernard and Walter Bernard causing them a deprivation of their Civil Rights.

30.     Subsequent to the May 3, 2023 wrongful arrest of Bernard, he made numerous in person appearances on behalf of his clients in the Allegheny County Courthouse from May 4, 2023 through August 9, 2023.

31.     On August 9, 2023, Bernard while appearing early at the Allegheny County Courthouse in anticipation of a hearing before Judge John McVay, he was placed under arrest by John Doe #7 of the Allegheny County Peace's Department without a valid warrant.

32.     Bernard was subsequently transferred to Allegheny County Jail on August 9, 2023 and remained in jail without any conditions as to how to get out of Allegheny County Jail nor any formal charges being brought against him.

33.     On August 16, 2023, Bernard through his legal team, filed an emergency motion with the Allegheny County Courts to be released from Allegheny County Jail because his civil rights had been violated having been detained since August 9, 2023 without being brought before a judge.

34.     Bernard's emergency motion was presented by a member of his legal team on August 18, 2023 before Defendant McGinley.  When the motion was presented, McGinley requested a two-hour break prior to making a ruling. After the two-hour break, McGinley indicated that she had a conversation with Ignelzi while he was on vacation.

35.     After the conversation and agreement with Ignelzi to violate Bernard's civil rights, Judge McGinley denied Bernard's motion leaving him in Allegheny County Jail for another three days before he was able to see a judge.

36.     On August 21, 2023, Bernard was transferred from Allegheny County Jail to the Allegheny County Civil Courthouse and brought before Ignelzi.

37.     On August 21, 2023, and while Ignelzi had been divested of any jurisdiction over Bernard, Ignelzi refused to recuse himself having been aware that Bernard sought injunctive relief from Ignelzi violating his civil rights.  Moreover, Ignelzi knew that an injunction hearing was scheduled just a few days later in Federal Court against him for the continued violation of Bernard's civil rights.

38.     On August 21, 2023, Ignelzi threatened that he was going to charge Bernard with criminal charges based on a May 4, 2023 Order Ignelzi gave when he had no jurisdiction to give the order and had been pending before the Appellate State Court since March 21, 2023.

39.     While Bernard remained in shackles having been detained in Allegheny County Jail for 13 days and the threat of going back to jail, Bernard agreed to settle the case so that he would no longer be detained.

40.     The Allegheny County Peace office retrieved some of Bernard's personal property from inventory that they had deprived him of on August 9, 2023.

41.     Bernard made an agreement with opposing counsel before the open court to settle the underlying civil case for eighty-thousand dollars ($80,000) as he remained under duress while shackled in the courtroom having been unlawfully detained without a hearing since August 9, 2023.

42.     The Allegheny County peace officers retrieved Bernard's personal checkbook and brought it to Bernard.  As Bernard remained shackled, he wrote a personal check for $80,000 to settle the civil case.

43.     County required Bernard to remain detained in Allegheny County Jail until proof of his check cleared.  Once Bernard's check cleared, County directed the Allegheny County Jail to immediately release Bernard.

44.     When Defendant Allegheny County Jail received County's order, Bernard remained incarcerated for three additional days.

45.     Plaintiffs bring this action against Defendants in their official capacities for injunctive relief under 42 U.S.C. § 1983 from the harassment and deprivation of their liberty rights when as to prevent the continuous harm towards the Plaintiffs as their matters from the underlying case remain on appeal before the Appellate state court.

46.     Plaintiffs bring this action against Defendants in their individual capacities for damages to compensate them in connection and in furtherance of their unlawful actions, including wrongful arrest, wrongful imprisonment, punitive damages for recklessly disregarding Plaintiffs' Civil Rights while various actions have been taken in the clear absence of jurisdiction as their case remains on appeal and attorneys' fees pursuant to 42 U.S.C.§ 1988 and declaratory relief.

47.     Plaintiffs ask this Court to declare that Defendant County and Ignelzi's action requiring a Black attorney to settle a civil case while remaining shackled in order to coerce a settlement that benefits an attorney and his client that are both in a non-suspect class, to be unconstitutional.

48.     Plaintiffs need injunctive relief from the continual unconstitutional actions by Defendants which have deprived their civil rights under 42 U.S.C. §1983 on multiple occasions.

49.     Upon information and belief, Defendants have continued to deprive Plaintiffs' rights since on or around May 3, 2023 in the clear absence of jurisdiction.

50.     Plaintiffs seek monetary damages against Defendants based on their actions performed in May and August of 2023.  Additionally, the non-judicial acts requiring Plaintiffs to settle a pending civil lawsuit when Bernard was shackled in handcuffs without the ability to speak with his client and negotiate a settlement which have caused Plaintiffs' injuries.

51.     Plaintiff Bernard seeks, money damages declaratory and injunctive relief against Allegheny County and its agents for depriving Bernard of his liberty interests under the first and fourteenth amendments.  Allegheny County Jail caused Bernard to be detained for 72 hours after being given a court order and throughout the duration of Bernard's detainment, he spent most days in lockdown protocol.  Additionally, Allegheny County Jail caused Bernard's ability to communicate with friends and family outside of prison walls to be deprived in violation of the first amendment.

52.     Allegheny County through its employees and policies from the Allegheny County Jail and Allegheny Peace Departments have caused Bernard to be harassed and suffer a deprivation of his rights guaranteed under the first, fourth thirteenth and fourteenth amendments.

53.     A few weeks before the matters were to be heard pertaining to Tenants' Confession of Possession hearing and Plaintiffs Confession for Money Judgment hearings, Landlord stole thousands of dollars' worth of business and personal property from Tenant and Plaintiffs relocated within the leased space while shut down.  Shortly after the theft incident, Tenant vacated the premises.

11

54.    Subsequently, a new tenant began to possess the Landlord's leased space and entered a new lease agreement with the Landlord approximately eight weeks (8) after the theft incident. The Pennsylvania State Trial Court subsequently issued a decision Confessing Money Judgment for a money judgment against the Plaintiffs as Guarantors of the lease between Landlord and Tenant. Upon information and belief, Judge Alan Hertzberg ("Judge Hertzberg") oversaw the proceedings.

55.    The Landlord was represented by Attorney Chris Cahillane ("Attorney Cahillane") through the law firm Tucker Arensberg PC.

56.    When Judge Hertzberg issued his opinion, he ordered that the Plaintiffs were entitled to a credit amount upon execution of the money judgment, premised upon the new tenant moving in and taking over the leased premises.   The sum certain amount of credit to give the Plaintiffs was to be determined at a later date to prevent a double recovery by the Landlord.

57.    Judge Hertzberg stated that *he retained jurisdiction* over all proceedings related to the execution on the judgment and when it came time to determine what the credit amount was to be given to Plaintiffs.

58.    Although, Judge Hertzberg had exclusive jurisdiction over the matter, Landlord began to request discovery from Plaintiffs pursuant to Rule 3117 of the Pennsylvania Rules of Civil Procedure Discovery in Aid of Execution, which permits a party to perform discovery on another party in aiding them in executing on the judgment.  However, the condition set forth by Judge Hertzberg that *required the Plaintiffs be given credit as to any execution matters*, had yet to occur.

59.    The new tenant was actually paying more in rent per month than Tenant had been paying.

60.     Landlord began to make discovery requests and requested records that Plaintiffs determined personal and confidential, e.g., federal tax returns, personal bank statements. Further, the Landlord's post-judgment discovery requests were made out-of-sequence, i.e., prior to the Court [Judge Hertzberg] determining the credit amount for offset on the judgment.

61.     Plaintiffs' disputed Landlord's discovery requests because a condition precedent for a credit to exist had not occurred.  Hence, execution on the judgment was an impossibility because there was no ability to determine the final amount.   Additionally, Plaintiffs cited Pennsylvania legal authority in *Linde v. Linde* 222 A. 3d 776 (Pa Super Ct. 2019), where the court reasoned that discovery in aid of execution was an impossibility when there is no ability to execute on a judgment.

62.     Landlord and Plaintiffs went back and forth for months trying to reach settlement terms of the case but never agreed to a final amount.

63.     On or around December 1, 2022 Judge Timothy McVay ("Judge McVay") entered an order that stayed any discovery on the matter until a hearing could be held to determine an amount for the Plaintiffs to post a bond which would help resolve what the credit amount Plaintiffs were owed pursuant to the condition set forth by the trial court. Additionally, Judge McVay entered an Order staying any discovery in aid of execution which is supported by Pennsylvania State Law because the ability to execute on a judgement had not arisen.

64.     Judge McVay set a hearing for January 12, 2023.  Right before the hearing, Plaintiffs' counsel and Attorney Cahillane made an agreement indefinitely post-pone the bond hearing to work the matters out.

13

65.     On March 21st, 2023, the Trial Court through Judge McGinley, entered an order setting a hearing date so the parties could finally resolve the dispute as to how much Plaintiffs were to be credited and thereby fulfilling the condition previously set forth by Judge Hertzberg. However, within that same order, Judge McGinley ordered a stay on any ability to execute any judgements pertaining to the case but Judge McGinley allowed Discovery in Aid of Execution to proceed until a hearing was held on May 4, 2023 to establish a final judgment amount while preventing a double recovery.

66.     On or around March 24th, 2023, Plaintiffs appealed the March 21, 2023 court order because Pennsylvania law is clear as explained in *Linde v. Linde* 222 A. 3d 776 (Pa Super Ct. 2019), that when execution is stayed then discovery in aid must be stayed.

Appellate Court Divests Jurisdiction over Discovery in Aid of Execution

67.     Under Pennsylvania Rules of Civil Procedure, the filing of an appeal divests the trial court of jurisdiction to "proceed further in the matter." Pa.R.A.P. 1701(a).  Also, under 1701(c), when a party has appealed from a collateral order, the trial court retains jurisdiction to continue to act on those parts of the case that are unrelated to the collateral matter that is the subject of the appeal. *Rosen v. Rosen*, 549 A.2d 561, 564 (Pa. 1988).  It is well established under Pennsylvania law that issues on appeal cause the trial court to lose jurisdiction on those matters before the appellate court.

68.     On or about March 28, 2023, while there was a stay on discovery in aid of execution and matter was before the Appellate Courts, Attorney Cahillane filed a Motion for Sanctions against Plaintiffs and he submitted them to County.

14

69.     Upon information and belief this was the second time Attorney Cahillane presented a Motion for Sanctions for Discovery in Aid of Execution to County when there was a stay on the matter.  For example, in February 2023 Attorney Cahillane submitted a Motion for Sanctions against Plaintiffs when despite Judge McVay placing a stay on Discovery in Aid of Execution in December of 2022 until a hearing to have a bond amount could be heard.

70.     Although Judge Hertzberg retained exclusive jurisdiction over the matter and the appellate court had divested the trial court of jurisdiction, County by and through Ignelzi continued to perform actions in absence of its jurisdiction.

71.     Plaintiffs' counsel had to withdraw from the case and as a result, Bernard began representing Plaintiffs on a temporary basis until Plaintiffs could find substitute counsel.

72.     On April 4, 2023 and shortly after Plaintiffs' previously counsel withdrew herself from the case, Bernard was getting a grasp of the case, Bernard received a notice to have a hearing from County based on Attorney Cahillane's motion.  The matter was scheduled for April 19, 2023 and was sent to Bernard and Attorney Cahillane.

73.     Attorney Cahillane responded and requested to the court that the hearing be changed to April 27, 2023, which the court sent to Plaintiffs as a Microsoft Teams Notice.

74.     On April 5, 2023, although there was already an automatic stay on any discovery matters because of the pending appellate matter, Bernard submitted an Emergency Application to County to stay all matters involved in the case until the parties had a hearing as to the Judgment amount.

75.     Upon submitting the Emergency Application directly to Ignelzi pursuant to his court procedures, Bernard heard back from Ignelzi's law clerk on April 5, 2023 and instructed all parties that he would get back to everyone pertaining to the matter.

76.     On April 27, 2023, Bernard still had a notification on his calendar that was previously sent from Ignelzi' s chambers from April 4, 2023.  As such, Bernard telephoned the Court to get a status update, since Ignelzi' s chambers had stated they would be in touch with everyone pertaining to the Emergency Application that was submitted on April 5, 2023.

77.     On April 27, 2023, Ignelzi began questioning Bernard if he had filed a response to Attorney Cahillane's motion.  Bernard explained that he was waiting to hear instructions from the court after submitting his Emergency Application and that he was told by Ignelzi' s law clerk that someone would get back to him.  Ignelzi instead began proceeding with a hearing and disregarded the Emergency Application.

78.     Ignelzi began questioning Bernard as to why he appealed the March 21, 2023, court order. Bernard reiterated that Plaintiffs had a heighten right to privacy in their finances pursuant to state and federal law and that there were disputed, ongoing issues between the parties.

79.     As the April 27th, 2023 hearing went forward, Bernard often times attempted to raise specific arguments before Ignelzi but was often cut off from speaking by him. Ignelzi clearly knew that the matter was pending before the Appellate Court but he continued with the hearing knowing he had no jurisdiction.

80.     Ignelzi knew that a pending matter to establish a final judgment was scheduled for May 4, 2023.

81.     However, Ignelzi willfully ignored that he had no jurisdiction on April 27, 2023 and put in an Order involving Discovery in Aid of Execution requiring action by May 1, 2023. Additionally, the Order stated that if Discovery was not completed by Plaintiff within three days (3), he was going to direct the peace to arrest both Bernard and his client, Wynton Bernard.

82.     Ignelzi knew or should have known that he didn't have jurisdiction over the subject matter based on 1) the matter being before the Appellate Court and 2) Judge Hertzberg never relinquished exclusive jurisdiction over the matter.

83.     On April 28, 2023, Bernard contacted the court again to inquire the status of his Emergency Application.  Bernard was then sent a denial of the Emergency Application and County directed the denial to be filed with the department of court records.

84.     Attorney Cahillane is a White male and when he submitted a motion to the court, he waited less than 24 (twenty-four) hours to get an answer as a *non-emergency* motion to County. However, Bernard had to wait three weeks for an answer when he submitted an emergency motion to County.

            On May 3, 2023, Bernard is jailed and unexpectedly removed from his residence.

85.     On that day at approximately 8:00 A.M., Defendant County unlawfully arrested Plaintiff Bernard from his personal residence.

86.     Based on information and belief, County unlawfully followed Ignelzi's direction to arrest Plaintiff Bernard.

87.     Plaintiffs' neighbors witnessed John Does 1-6 yelling, threatening and banging on Plaintiffs' residence for Plaintiffs to come out of their residence without a warrant for approximately an hour.

88.     Upon information and belief, John Doe 1 threatened Bernard that he and his fellow colleagues of the Peace's Department were going to break into the residence if Plaintiffs did not come out.

89.     At or around 8:56 am, John Doe 1 called Bernard on his personal cellphone and left a voice message demanding that Bernard open the door because if Bernard's behavior of not opening the door continued, he was going to have Bernard placed in jail.

90.     Bernard called County back immediately and County indicated that Ignelzi just wanted to "see him."  County, by and through the power and color of law asserted by Defendant Harper also threatened that if Bernard didn't come out, "the situation was going to get much worse."

91.     Under the threat of County's peace officers, breaking into Plaintiffs' residence using a break-in order from Ignelzi, while being concerned for his family's safety, Bernard came outside of his front door.

Bernard wrongfully arrested and jailed on May 3, 2023

92.      Bernard was arrested and escorted to the back seat of the peace officers' vehicle while neighbors continued to witness a Black attorney being taken away by multiple law enforcement agents.

93.     Bernard was transported downtown to the Allegheny County Courthouse by members of the Defendant Allegheny County where he was removed from the peace vehicle and shackled. Next, he was placed in a large jail cell with other inmates also known as the "bullpen."  Contained within the jail cell with Bernard were approximately five (5) other detainees.

94.     Since Bernard was seized early in the morning, he didn't have a chance to eat breakfast and remained in the jail cell hungry with no food.

95.     After being incarcerated for hours, he was eventually summoned to come out of the jail cell and was re-shackled.

96.     Bernard was then escorted in shackles through the Criminal Court of Common Pleas of Allegheny County where he represents criminal defendants.

97.     While still in shackles, Bernard was brought before Ignelzi and was ridiculed for not opening his residential door quickly enough for the numerous deputies as they knocked outside. Additionally, Ignelzi scorned and blamed Bernard for almost getting himself hurt.  He also scorned and reprimanded Bernard for potentially causing harm to the peace deputies.

98.     Ignelzi confirmed that there were discussions with the Peace's Office that an approval of a break in order into Plaintiffs' residence almost occurred.

<u>Ignelzi acted in clear absence of jurisdiction while giving an ultimatum</u>

99.      While Bernard remained shackled in the courtroom, Ignelzi gave Bernard an ultimatum consisting of two options to be decided within 15 minutes in order to be free from incarceration: 1) Bernard needed to settle the case that was currently on appeal before the Appellate Court in an amount that the opposing counsel had pre-determined with no ability to negotiate without his client being present; or 2) that Bernard was required to disclose the confidential information from both his and his client Wynton Bernard's private information.

100.    After a few minutes, Bernard while remaining under duress, notified Ignelzi of the decision he was required to make while being deprived of his liberty interest.

101.    Ignelzi made it clear that if Bernard did not agree to one of the two options within 15 minutes, Bernard would remain incarcerated.

102.    Ignelzi also exceeded his jurisdiction when he knew or should have known, that the required information he demanded Bernard to produce, was a matter before the Appellate Court.

The information Ignelzi was requiring Bernard to produce was confidential information such as Federal Tax Returns, bank account statements and as well as other financial documents.

103.     While remaining under duress, Bernard began involuntarily answering questions.  Ignelzi continued to threaten Bernard that if he did not respond with answers to his liking or if the answers were not sufficient, he was going to order that Bernard remain in the custody of the Allegheny County Jail.  At one point during the interrogation, Bernard pleaded with Ignelzi that his actions were unjust and unconstitutional.  However, Ignelzi responded with "you may not like it, but it is very just."

104.     Bernard asserted his right to remain silent and plead the 5th amendment against self-incrimination, and to not answer questions absent the presence of his lawyer, but Ignelzi continually mandated Bernard to answer questions in full without allowing Bernard to object to any of the questions. For example, when Bernard attempted to object to the relevance of answering questions pertaining to his 2018 income because the matter in dispute arose from events that occurred in 2020, Ignelzi stated, "no, we're passed that."  Ignelzi made Bernard answer questions against his will and after Bernard would answer, he would then look at the opposing counsel in the courthouse and confirm if the answers were "good enough."  Once opposing counsel verbally confirmed that answers were sufficient enough, Ignelzi would proceed to the next question.

105.     Ignelzi finally allowed Bernard to be released from custody on condition that Plaintiffs produce all information and that opposing counsel was going to subsequently draft up and request. Ignelzi then gave opposing counsel assurance that whatever was drafted, he would approve prior to seeing the Order.

106.   Requiring an Attorney to settle a case on behalf of his client within 15 minutes while under the stress and duress of wearing handcuffs is not a judicial act normally performed by a judicial officer in civil court.  Additionally, the Pennsylvania Appellate Courts have exclusive jurisdiction and divest all jurisdiction from the trial court in Pennsylvania over collateral and final orders.

107.   On May 4, 2023, Ignelzi while he knowingly had no jurisdiction over Plaintiffs, created an illegal Order to be filed for Plaintiffs to turn over confidential bank account information by May 15, 2023 while threatening the Plaintiffs' liberty rights.

108.   From May 16, 2023 through May 31, 2023, County peace officers, arrived at Plaintiffs' residence to harass, assault and intimidate Plaintiffs by sticking up their middle fingers to Plaintiffs' door surveillance camera.

109.   The unprofessional visual harassment by County, and upon information and belief, caused, directed and encouraged by County employee Defendant Harper, was done with the intent to emotionally disturb and further threaten, intimidate and harass Plaintiffs.

110.   On or about June 5, 2023, Ignelzi filed an Order of contempt against Bernard.

111.   Upon information and belief, although the June 5, 20223 Order was filed on June 5, 2023, it was backdated to May 16, 2023 when jurisdiction had been divested from the trial court.

112.   Ignelzi held Bernard in contempt of court on May 16, 2023 1) in the absence of jurisdiction, 2) without a hearing scheduled as to hold Bernard in contempt of court and 3) knew that even if he had jurisdiction over Plaintiffs under Pennsylvania law, he was required to give Plaintiffs 30 days to appeal where no government could act on his order.

113.   Where a court enters an order without authority or legal right to make such an order, it is powerless to attempt to enforcement. *Commonwealth v. Heidl* 57 WDA 2021 at 6 (Pa. Super. Ct.

Nov.30, 2021). Jurisdiction is vested in the Superior Court upon the filing of a timely notice of appeal. *Id.*

June 15, 2023- Jurisdiction again is divested from the Trial Court

114.    Pursuant to 42 Pa. C. S.§ 742 of Pennsylvania law, the Superior Court has exclusive jurisdiction over orders of the courts of common pleas, regardless of the nature for the controversy.

115.    On June 15, 2023. Bernard appealed the June 5, 2023 order holding Bernard in contempt of court thereby immediately divesting Ignelzi's contempt order. As such, any further acts by Ignelzi were in clear absence of jurisdiction until the Appellate Court relinquished jurisdiction. As of the filing of this Amended Complaint, that matter has continued to remain pending before the Superior Court and the Superior Court has not relinquished jurisdiction at any time since June 15, 2023.

August 9, 2023- Bernard is arrested without probable cause

116.    On or about August 9, 2023, Bernard was arrested by the John Doe 7 as he was employed by Defendant Allegheny County. Bernard while at the Allegheny County Courthouse and preparing for a hearing before the Honorable Judge Timothy McVay was placed under arrest without probable cause nor a valid warrant.

117.    Upon information and belief, Bernard requested to see a warrant for his arrest and Jon Doe #7 was unable to provide a warrant.

118.    Upon information and belief, John Doe 7 flashed Bernard what was believed to be an invalid and old Court Order from June 5, 2023 from Ignelzi. John Doe 7 indicated that Ignelzi wanted Bernard arrested.

119.    Bernard notified John Doe 7 that there was no basis for the arrest and that there weren't any pending matters before Ignelzi.  Furthermore, Bernard stated that he had a court order from Judge Jill Rangos to be at a subsequent hearing later in the day as a court appointed defense counsel for Allegheny County.

120.    Additionally, Bernard requested that he be heard immediately by Ignelzi because his being placed under arrest was illegal.

121.    Bernard was not given a condition as to how to be released from custody nor given any information of how long he was to be detained.

122.    Bernard while shackled, was deprived of his personal property including his laptop, notebook, access to cell phone, personal check book, keys and legal files.

123.    Bernard was escorted down to the bullpen. until John Doe 7 brought Bernard back up before Judge McVay for his hearing.

124.    Judge McVay indicated on the record that Bernard was handcuffed and Bernard requested a continuance of the hearing because it was difficult to litigate and argue at hearing while remaining in handcuffs before the court.

125.    Bernard, inquired to Judge McVay as to how he was handcuffed and Judge McVay stated that it appeared to be at the direction of Ignelzi and that Bernard would have to take it up with Ignelzi.

Bernard Hospitalization

126.    Bernard was returned to the bullpen and remained in custody by Defendant Allegheny County. Bernard stated again that he had a court order in his bag to go to another hearing. However, County refused to release Bernard.

127.    While in custody, Bernard needed medical attention and an ambulance was requested. EMT individuals came to the bullpen and transported Bernard to UPMC St. Margaret's hospital.

128.    While at UPMC St. Margaret, Bernard remained shackled to a hospital bed while receiving treatment.

129.    While at the hospital, Bernard suffered further physical injury to his arm and sought subsequent treatment for his injuries while incarcerated at Allegheny County Jail.

130.    When Bernard was finally discharged from the UPMC hospital, he was subsequently retrieved by two of County's peace officers who upon information and belief were responsible for transporting Bernard from the hospital to Allegheny County Jail.

131.    During the transfer, the two Allegheny County Peace officers requested a copy of the warrant from the officer who had Bernard at the hospital in which Bernard was being held.

132.    The officer holding Bernard in the hospital stated that "*this was all I was given.*" While holding up an old court order.

133.    All three peace officers concluded that there was not a warrant.

134.    The two peace officers continued to transport Bernard to ACJ and inquired to Bernard and subsequently to their immediate supervisor why Bernard was in their custody because something

did not seem right and reasoned that there must have been a mistake as to why they were detaining Bernard.

135.    Upon information and belief, the two peace officers brought it to the attention of their immediate supervisor who subsequently made a phone call to inquire as to why Bernard was being detained.

136.    Their supervisor, after making a phone call, received instruction to continue to process Bernard in the Allegheny County Jail.

<u>Bernard unlawfully detained in Allegheny County Jail</u>

137.    Bernard was never a prisoner for the purposes of 28 U.S.C. § 1915A which defines a prisoner "as *any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release or diversionary program." – 28 U.S.C. §1915A*.

138.    Bernard was thrown in Allegheny County jail without the ability to make a phone call until approximately 3:30am on August 10, 2023. Bernard was deprived of being able to directly communicate with friends and family from approximately 9:00am on August 9, 2023 until 3:30am on August 10, 2023.

139.    Under 234 Pa. Code §150, an individual shall not be detained without a bench warrant hearing on that bench warrant longer than 72 hours, or the close of the next business day if the 72 hours on a non-business day.  Furthermore, 234 Pa. Code §150 provides that an individual is required to be released if they have not been heard within 72 hours.

140.    Bernard was unable to see a Judge for well over 72 hours while he remained in Allegheny County Jail with no ability to post bond, information as to what charges were brought against nor any conditions as to how to be released.

141.    Throughout the time Bernard was incarcerated, he was often placed on lockdown procedures the majority of his time being incarcerated with limited access to any friends and family.

August 16, 2023- Emergency Motion is Filed Based on Unlawfully being detained

142.    On August 16, 2023, after remaining in Allegheny County Jail for over 168 hours and 7 days without a hearing, Bernard caused an emergency motion to be filed in an attempt to be released from Allegheny County Jail after being detained well over 72 hours without any hearing.

143.    On August 17, 2023, Ignelzi filed a notice of a hearing to be scheduled on August 21, 2023 for Attorney to be heard on a contempt charge.  However, upon information and belief, there weren't any contempt charges against Bernard to justify a contempt hearing because court there weren't any pending orders requiring any action from Bernard as supported by any court dockets.

Conspiracy to violate Bernard's Civil Rights

144.    On August 18, 2023, at or around 11:00am, a member of Bernard's legal team, Attorney Justin Ramano brought before Judge Mary McGinley, the emergency petition that was filed on August 16, 2023 while Bernard remained incarcerated.

145.    At the hearing, Judge McGinley, indicated to Attorney Justin Ramano that she was not going to rule on the motion and that she would take a two (2) hour break.

146.    Attorney Ramano came back after two hours.  Before the court, Judge McGinley stated that she had spoken with Ignelzi while he was on vacation.  She stated that based on the conversation with Ignelzi, she was denying the Motion to release Bernard.

147.    Subsequently, the motion to release Bernard while being held for 10 days without a hearing as to his detainment was denied and Bernard remained incarcerated for another 2 days without a hearing.

148.    Upon information and belief, Judge McGinley and Ignelzi made an agreement to violate Bernard's civil rights by allowing him to remain in Allegheny County Jail in violation independent of the trial court's decision.

149.    Bernard's unlawful confinement from August 18, 20223 through August 21, 2023 was the result of an independent conspiracy to violate his civil rights.

August 21, 2023- Bernard is transferred to the Civil Courthouse from Jail

150.    On August 21, 2023, Bernard was transported from Allegheny County Jail to the Allegheny County Courthouse before and brought before Ignelzi while remaining in shackles wearing an Allegheny County Jail jumpsuit.

151.    At the hearing, which Ignelzi clearly acted in absence of his jurisdiction, threatened Bernard with criminal charges and that he would continue to keep Bernard incarcerated.

152.    Faced with the threat of his rights further being deprived and criminal charges being implemented, Bernard sought to settle the civil case with Landlord.

Allegheny County Peace- Negligent Act

153.    Although, Bernard's personal property was removed by the Allegheny County Peace Department, they separated his keys, wallet and cellphone and had those items transferred to Allegheny County Jail.  Bernard's laptop, access to his legal files and personal checkbook remained in custody with the Allegheny County Peace Department.

154.    On August 21, 2023 members of the Allegheny County Peace Department retrieved Bernard's bag as Bernard remained in custody.

155.    Bernard, while handcuffed and in the presence of the court, wrote a personal check for $80,000.

156.    Subsequent to the check being written, Ignelzi requested that a copy of the check be made and directed one of his agents to photocopy the check in the presence of the court.

157.    On the record, the parties made an agreement to settle the underlying civil case.

158.    Although the underlying case had been settled by the parties, Ignelzi caused Bernard to go back to Allegheny County Jaill and conditioned required that Bernard remain lodged in Allegheny County Jail until it was proven that his personal check for $80,000 cleared.

Bernard's phone privileges removed

159.    On August 21, 2023 when Bernard was transported from the Allegheny County Civil Courthouse back to Allegheny County Jail, his phone privileges were made inoperable.

160.    Bernard was unable to make phone calls or communicate with friend or family until August 23, 2023.

August 25, 2023- Bernard's check clears

161.    Bernard's check cleared on or about August 25, 2023.

162.    Upon information and belief, when Ignelzi received confirmation of Bernard's check being cleared, he issued an order releasing Bernard from the Allegheny County Jail.

163.    Although Ignelzi submitted communication to Allegheny County Jail to finally release Bernard, he was not released until August 28, 2023.

August 28, 2023- Bernard is released from Allegheny County Jail

164.    Bernard was finally released from Allegheny County Jail around 10:30am-approximately 20 days since he was first detained and 72 hours from Ignelzi's instruction directing Allegheny County Jail to immediately release Bernard.

165.    Although Bernard was initially arrested and detained by John Doe 7, he was never charged with any crime. Moreover, there was only one condition ever placed on Bernard as it related to being released from Allegheny County Jail which was not procured until on August 21, 2023 by Ignelzi.  Specifically, the condition was that Bernard's $80,000 personal check written while he was handcuffed after being incarcerated for 13 days, had to clear.

Aftermath of the Arrest and Incarceration

166.    Plaintiffs have had to face the embarrassment and shame having multiple law enforcement agencies arresting Bernard in plain view of neighbors.

167.    The ridicule and stress from Ignelzi' s actions have detrimentally impacted Wynton Bernard's career as a professional athlete.  As a public figure, Wynton Bernard has had to deal

with damage to his reputation being one of the few Black American professional baseball players in organizations related to Major League Baseball.

168.    Wynton Bernard has had to worry about being picked up by the peace officers while performing his job as a professional baseball player.

169.    Bernard has experienced the detrimental effects of Ignelzi' s actions; he has been displaced from his law offices and the ability to receive and send out communications from the Court and his clients restricted.

170.    Plaintiffs no longer feel safe in their home and fear that deputies will return to remove them out of their house without notice.

171.    Plaintiffs since May have been harassed and deprived of their liberty rights in the clear absence of jurisdiction.

172.    The actions of Defendants have caused Bernard suffer emotional injury because of the continued acts by Defendants while acting in the clear absence of jurisdiction.

## CLAIMS FOR RELIEF

### COUNT I
### (DECLARATORY RELIEF CLAIM)
*(Against Defendants County, McGinley and Ignelzi)*

173.    Plaintiffs ask this Court to declare that the agreement conspired between McGinley and Ignelzi on August 18, 2023 resulting in the deprivation of Bernard's civil rights when he was detained well over 72 hours without a fair and full proceeding as unconstitutional.

174.    Additionally, Plaintiffs ask this Court to declare the action requiring an attorney to settle a case without being able to speak to his client pertaining to the settlement terms as a condition to the attorney's being unshackled to be unconstitutional.

175.    Plaintiffs seek declaratory relief that removing an attorney from his residence without a notice of hearing or legally valid warrant, when a similar situated opposing counsel had notice of the hearing, to be unconstitutional.

176.    Plaintiff Walter Bernard also seeks declaratory relief from this Court dismissing all pending actions in the Superior Court of Pennsylvania.

### COUNT II- UNLAWFUL SEIZURE
(Fourth Amendment Violation- Unlawful Seizure)
(42 U.S.C. §1983)
*(Walter Bernard and Wynton Bernard v. County and Ignelzi)*

177.    The allegations contained above are incorporated herein by reference as if the same were set forth in full.

178.    At all times relevant to the acts and omissions herein alleged, County and Ignelzi were acting under color of law and in the course and scope of their employment.

179.    Under the Fourth Amendment to the United States Constitution, Plaintiffs have the right to be secure in their persons, houses and effects against unreasonable searches and seizures.

180.    A seizure of property occurs under the Fourth Amendment when there is some meaningful interference with an individual's possessory interest in that property.

181.    Upon information and belief, County and Ignelzi conspired to interfere with Plaintiffs' possessory interest in their property without a legally valid warrant while acting in the clear absence of jurisdiction.

182.    The presence of multiple officers at Plaintiffs' residence along with the numerous threats that Plaintiffs comply with the John Does 1-6 requests to come out of their residence or face further consequences and jail time constituted a seizure under the Fourth Amendment.

183.    Bernard's detention on May 3, 2023 was unlawful because it was unreasonable in time and/or manner unnecessarily degrading, harmful, intrusive, humiliating, prolonged, and not justified under the circumstances.

184.    Upon information and belief, Ignelzi instructed state actors to use coercive pressure which resulted in a significant detainment of Bernard's freedom of movement because it was objectively clear that Bernard was not free to go when he nor Wynton Bernard had committed a crime.

185.    The aforementioned facts of Bernard's unreasonable detention and search directly and proximately caused Bernard's injuries that include emotional distress and the deprivation of his liberty.

186.    Ignelzi used his authority to create an opportunity of danger towards Plaintiffs that would not have existed but for Defendants' unlawful actions.

187.    The conduct of Ignelzi was willful, wanton, malicious, and done with reckless disregard for the Constitutional rights and safety of the Plaintiffs when he knew that he did not have jurisdiction.

188.    The acts of Ignelzi were intentional and proximately deprived Plaintiffs of their rights, privileges, liberties, and immunities secured by the Constitution of the United States.

189.    As a direct and proximate result of Defendants' unlawful actions, Plaintiffs have suffered and will continue to suffer irreparable injury as a result of Ignelzi's acts.

190.    John Does 1-6 knew or should have known based on their training and expertise that they did not have a warrant as to justify removing Bernard from his residence on May 3, 2023.

191.    The actions and inactions of Defendants, which caused Plaintiffs physical and emotional injuries were the direct result of the herein named Defendants while acting under color of law on May 3, 2023.

WHEREFORE, Plaintiffs request that the Court find and determine, after trial by jury as appropriate, that Plaintiffs suffer substantial and continuing injuries as a result of the deprivation of their civil and Constitutional rights, and otherwise conduct and award the following relief:

i.    A declaration that Defendants, County, Ignelzi, John Does 1-6, jointly and severally, violated Plaintiffs' civil rights;

ii.    Compensatory damages in excess of $75,000

iii.    Pre-judgment interest, attorneys' fees and costs;

iv.    Punitive damages against the individual defendants in their individual capacities; and

v.    Such other legal and equitable relief as the Court deems just and proper.

### COUNT III- UNLAWFUL SEIZURE- Failure to Supervise on May 3, 2023
(Fourth Amendment Violation- Unlawful Seizure)
(42 U.S.C. §1983)
*(Walter and Wynton Bernard v. County)*

192.    The allegations contained herein are incorporated as is full set forth herein.

33

193.    The actions and inactions of Defendants, which caused Plaintiffs physical and emotional injuries are the direct result of failure to properly supervise John Does 1-6 as employees of Allegheny County.

194.    Defendant Allegheny County failed to properly supervise their subordinates when they failed to implement and enforce policies that trained officers how to seize an individual from their residence without violating their civil and Constitutional Rights when they knew or should have known they did not have a warrant.

195.    Despite the importance of knowing the prevalence of the violation of the civil rights of citizens and importance of implementing and enforcing policies that train officers on how to properly interact with individuals while in their residence without unlawfully arresting them, Defendant Allegheny County failed to enforce policies that trained staff how to identify and handle those issues.

196.    Upon information and belief, the lack of supervision and discipline by Defendant Allegheny County amounts to a custom and practice was the moving force behind Bernard being arrested by John Doe 7 on August 9, 2023 when he unlawfully arrested Bernard at the courthouse.

197.    The acts and failures to act of Defendants on May 3, 2023 were objectively unreasonable, and so deliberate and malicious that it would shock the conscience of a reasonable person because one doesn't expect to be removed by officers without jurisdiction under physical threat while in the privacy of their residence.

WHEREFORE, Plaintiffs request that the Court find and determine, after trial by jury as appropriate, that Plaintiffs suffered substantial and continuing injury as a result of their civil and Constitutional rights, and otherwise wrongful conduct award the following relief as appropriate:

34

i.      A declaration that Defendant Allegheny County violated Plaintiffs' civil rights;

ii.     Compensatory damages in excess of $75,000

iii.    Pre-judgment interest, attorney's fees and costs;

iv.     Punitive damages against defendant Allegheny County

v.      Such other legal and equitable relief as the Court deems just and proper.

## COUNT IV-UNLAWFUL SEARCH
(Fourth Amendment as applied to the Fourteenth Amendment Violation- Unlawful Search)
(42 U.S.C. §1983)
*(Walter Bernard and Wynton Bernard v. County and Ignelzi)*

198.    The allegations contained above are incorporated herein by reference as if the same were set forth at length.

199.    The Fourth Amendment of the U.S. Constitution prohibits unreasonable searches.

200.    On or about May 3, 2023, Ignelzi required Bernard to testify in court after Bernard was removed from his residence without the notice of any hearing or warrant.

201.    On or about May 3, 2023, while Bernard was shackled, County, Ignelzi and through the use of verbal threats and in the absence of jurisdiction, caused Bernard to answer confidential questions while remaining shackled after being pulled from his residence without a warrant.

202.    As a direct and proximate cause of Ignelzi' s actions, Plaintiffs suffered injury in his forced requirement of Plaintiff to relinquish information, when Plaintiffs maintain a Constitutional right of privacy.

203.    Ignelzi, in the absence of jurisdiction required that Bernard disclose confidential information which Plaintiffs had a privacy right under the fourteenth amendment.

204.    Ignelzi was the proximate and actual cause of Bernard's injuries while acting in the clear

absence of any jurisdiction over the Plaintiffs.

WHEREFORE, Plaintiffs request that the Court find and determine, after trial by jury as

appropriate, that Plaintiffs suffers substantial and continuing injury as a result of deprivation of

their civil and Constitutional rights, and otherwise conduct and award the following relief:

i.      A declaration that Defendants Ignelzi and County violated Plaintiffs' civil rights;

ii.     Compensatory damages in excess of $75,000;

iii.    Pre-judgment interest, attorneys' fees and costs;

iv.     Punitive damages against the individual defendant in his individual capacity; and

v.      Such other legal and equitable relief as the Court deems just and property.

### COUNT V- DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS
(Fourteenth Amendment-Deprivation of Liberty without Due Process of Law)
(42 U.S.C. §1983)
*(Walter Bernard and Wynton Bernard v. County, Harper, Ignelzi and McGinley)*

205.    The allegations contained in the above paragraphs are incorporated herein by reference as

if fully set for here within.

206.    The Fourteenth Amendment states that no State shall "deprive any person of life, liberty,

or property without due process of law." U.S. Const. Amend. XIV.

207.    Plaintiffs have both a fundamental property and liberty interest in remaining and residing

in their property.

208.   On May 3, 2023, County and Ignelzi violated Bernard's federal and state due process rights by removing Bernard from his home without providing notice and an opportunity to be heard on an issue that he had no jurisdiction over.

209.   County performed the above-described acts under color of state law, intentionally, with reckless disregard of Bernard's Constitutional rights.

210.   County and Ignelzi knew or should have known that they had no jurisdiction over the issue to justify the restraint of Bernard from his residence.

211.   On or about May 3, 2023, Bernard's liberty interests were restrained prior to an adjudication of guilt in accordance with due process of the law.

212.   Wynton Bernard had a constitutional right to have a hearing and to be heard on either his own behalf or through counsel which were deprived through the actions of County.

213.   Upon information and belief, Ignelzi conspired with County when it intentionally and willfully caused Bernard to be arrested, transported and jailed without due process of the law.

214.   County's detention of Bernard was without legal authority, and unsupported by reasonable suspicion of wrongdoing, nor was there probable cause to believe that a crime had been committed.   Additionally, Ignelzi committed the May 3, 2023 act in the absence of exigent circumstances.

215.   On August 9, 2023 Ignelzi conspired with County causing Bernard to be deprived of his liberty rights without the due process of law.

216.   On August 18, 2023, McGinley further participated in the unlawful detainment of Bernard's being unlawfully detained when she agreed with Ignelzi and County to hold Bernard

in Allegheny County Jail when Bernard had been detained well over 72 hours without a hearing as to his detainment.

217.    As a direct and proximate result of Bernard being so detained, Plaintiffs have and continue to suffer emotional distress, humiliation, physical discomfort, and injury.

WHEREFORE, Plaintiffs request that the Court find and determine, after trial by jury as appropriate, that Plaintiffs suffers substantial and continuing injury as a result of deprivation of their civil and Constitutional rights, and otherwise conduct and award the following relief:

    i.    A declaration that Ignelzi, violated Plaintiffs' civil rights;

    ii.    Compensatory damages in excess of $75,000;

    iii.    Pre-judgment interest, attorneys' fees and costs;

    iv.    Punitive damages against the individual defendant in his individual capacity; and

    v.    Such other legal and equitable relief as the Court deems just and proper.

### COUNT VI
### VIOLATION OF RIGHT TO EQUAL PROTECTION – CONSPIRACY
### 14th AMENDMENT (42 U.S.C. § 1983)
*(Walter Bernard v. County, Ignelzi, McGinley and Harper)*

218.    Plaintiffs incorporate the above paragraphs as if fully set forth herein.

219.    Upon information and belief, County peace officers under the direction of Harper and Ignelzi acted in concert to unlawfully arrest Bernard, bring him to the courthouse and subsequently unlawfully detain Bernard.

220.    Upon information and belief, the individual defendants, while acting within the scope of their employment and under color of state law, made an agreement in order to deprive Bernard of

his clearly established Fourth and Fourteenth Amendments rights to be from unreasonable searches and seizure, false arrest, false imprisonment and deprivation of liberty without due process of law and a fair trial.

221.    In furtherance of the conspiracy, Defendants engaged in overt acts including, wrongfully arresting Bernard while they knew they lacked probable cause.

222.    Defendants' concerted actions in the clear absence of a warrant, continued to coerce and threaten Bernard for the purposes of unlawfully removing Bernard from his residence.

223.    Upon information and belief, County acted in concert with its peace officers to aggressively threaten to break into Plaintiffs' residence for the purposes of intimation when they both knew or should have known that there was no authority to do so.

224.    The combination of agreeing to arrive at Plaintiffs' residence in the absence of a warrant or any warrant exceptions, while acting in concert to ignore the absence of a valid warrant. Defendants John Does 1-6 and Ignelzi agreed and/or came to an understanding that they would unlawfully remove Plaintiffs from their residence and illegally detain Plaintiffs.

225.    Defendants' acts and omissions, as described in the preceding paragraphs, were the direct and proximate cause of Bernard's injury.

226.    Defendants knew or should have known that they were acting under the color of law, unless stated otherwise, and acted in the course and scope of their employment with the County, unless falsely asserting authority knowing they did not have authority to assert. This action, lead to, among other things, Bernard's wrongful arrests and repeated incarceration.

227.    At all times relevant to the acts and omissions herein alleged, Ignelzi, McGinley and Harper were employed and/or agents of County as peace of judicial officers At all times relevant

herein. Bernard had a right to equal protection under the law as afforded and provided by the Fourteenth Amendment and protected by the same and 42 U.S.C. § 1983.

WHEREFORE, Plaintiffs request that the Court find and determine, after trial by jury as appropriate, that Plaintiffs suffers substantial and continuing injury as a result of deprivation of their civil and Constitutional rights, and otherwise conduct and award the following relief:

i.    A declaration that Defendants, jointly and severally, violated Plaintiffs' civil rights;

ii.    Compensatory damages in excess of $75,000;

iii.    Pre-judgment interest, attorneys' fees and costs;

iv.    Punitive damages against the individual defendants in their individual capacities; and

v.    Such other legal and equitable relief as the Court deems just and proper.

### COUNT VII
### FAILURE TO INTERVENE
*(Fourteenth Amendment)*
(42 U.S.C. § 1983)
(*Walter Bernard v. Ignelzi, McGinley, County, John Does 1-20*)

228.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

229.    By their conduct and under color of state law, the individual Defendants, acting in concert within the scope of their employment, had opportunities to intervene on behalf of Bernard to prevent false arrest, false imprisonment and deprivation of liberty without due process of law, but with deliberate indifference, declined to do so.

230.    The herein named Defendants had the power to prevent or aid in the unlawful acts of removing Bernard from his home, the unlawful detainments on May 3, 2023 and August of 2023 in the absence of any warrants and failed to intervene.

231.    The failure to intervene when Defendants they knew or should have known there

was an agreement to deprive Bernard's liberty rights guaranteed under the Constitution.

232.    Defendants' act and omissions, as contained in full herein were the direct and

    proximate cause of Plaintiffs' injuries.

        WHEREFORE, Plaintiffs request that the Court find and determine, after trial by jury

as appropriate, that Plaintiffs suffered substantial and continuing injuries as a result of a

deprivation of their civil and Constitutional rights, and otherwise conduct and award

compensatory damages in excess of $75,000 to be determined at trial, a declaration that

Defendants jointly violated Plaintiffs' civil rights, court costs, attorneys' fees, punitive damages

and such other legal and equitable relief as this Court deems just and proper.


### COUNT VIII
### VIOLATION OF SUBSTANTIVE DUE PROCESS
(Fourteenth Amendment-Retaliation Against Right to Privacy)
(42 U.S.C. §1983)
*(Walter Bernard and Wynton Bernard v. County)*

233.    The allegations set forth in the preceding paragraphs are incorporated as though full set

forth herein.

234.    Plaintiffs have an interest in avoiding disclosure of personal matters pursuant to *Whalen

v. Roe*, 429 U.S. 589, 599(1977).

235.    Plaintiffs claim damages for the violation of their right to privacy under the Fourteenth

Amendment of the United States Constitution.

236.    The societal interest in disclosure of Plaintiffs' privacy interest did not outweigh the need to breach Plaintiffs' privacy interest that Bernard was forced to do while handcuffed in the courtroom under duress.

237.    County through Ignelzi, unlawfully and without legal justification, , deprived the Plaintiffs of their privacy right protected by the Fourteenth Amendments to the United States Constitution.

238.    County retaliated against the Plaintiffs for asserting their rights under the Fourteenth Amendment.  Additionally, County, through Ignelzi required Bernard to make a decision on behalf of his client Wynton Bernard, within a fifteen-minute time frame while being shackled and without allowing Bernard to discuss the settlement terms with his client.

239.    County's actions were intentional, willful, and malicious, with a total disregard to the law, and shocks the conscience of reasonable person.

240.    Plaintiffs were deprived protection against the arbitrary actions of County that engaged in egregious conduct in clear absence of Ignelzi's jurisdiction causing injury to Plaintiffs.

241.    As a direct and proximate cause of County's through the conduct of Ignelzi, Plaintiffs suffered a deprivation of their Fourteenth Amendment rights through the disclosure of confidential information.

242.    As a direct and proximate cause of County's actions, Plaintiffs' respective careers as professionals have suffered detrimentally.

WHEREFORE, Plaintiffs request that the Court find and determine, after trial by jury as appropriate, that Plaintiffs suffers substantial and continuing injury as a result of deprivation of their civil and Constitutional rights, and otherwise conduct and award the following relief:

i.       Compensatory damages in excess of $75,000;

ii.      Injunctive relief preventing Defendant from retaliating against Plaintiffs when they have exercised their Fourteenth Amendment rights in the absence of jurisdiction;

iii.     Pre-judgment interest, attorneys' fees and costs;

iv.      Punitive damages against County; and

v.       Such other legal and equitable relief as the Court deems just and proper.

## COUNT IX- SIXTH AMENDMENT RIGHT TO COUNSEL
(Sixth Amendment as applied through the Fourteenth Amendment Right to Counsel)
(42 U.S.C. §1983)
*(Walter Bernard v. County and Ignelzi)*

243.   Plaintiffs incorporate the above paragraphs as if full set forth herein.

244.   Bernard while shackled on May 3, 2023, was forced to make involuntary statements while threatening his liberty rights without an attorney.

245.   The arrest of Bernard and the jailing of Bernard was made prior to any formal judicial hearing.

246.   The right to counsel granted by the Sixth and Fourteenth Amendments of the Constitution mandates that an individual is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated, whether by way of a formal charge, preliminary hearing, indictment, information, or arraignment.

247.   Under the Sixth Amendment of the United States Constitution as applied to the states through the Fourteenth Amendment, guarantees a defendant the right to have counsel present at all critical stages of a criminal proceeding.

43

248.    Bernard on May 3, 2023, while not free to leave as a result of being shackled, had a right to counsel while he was unlawfully subjected to custodial interrogation by County and Ignelzi.

249.    Statements made during the May 3, 2023 hearing were not voluntary and Bernard never consented to the questioning by County before the court neither did he knowingly and intelligently waive his right to counsel in the criminal proceeding.  Bernard had the right to have the assistance of counsel for his defense.

250.    The Sixth Amendment Right to Counsel attached prior to being interviewed in shackles before County when Bernard had no notice of a hearing being held on May 3,2023.

251.    County said nothing to explain to Bernard the right of representation nor informing him his right to counsel during a critical state of a judicial proceeding unlawfully created in the clear absence of jurisdiction over Plaintiffs in violation of Bernard's Sixth Amendment.

         WHEREFORE, Plaintiffs request that the Court find and determine, after trial by jury as appropriate, that Plaintiffs suffers substantial and continuing injury as a result of deprivation of their civil and Constitutional rights, and otherwise conduct and award the following relief:

      i.   A declaration that Defendants violated Plaintiffs' civil rights;

      ii.   Compensatory damages in excess of $75,000;

      iii.  Pre-judgment interest, attorneys' fees and costs;

      iv.  Punitive damages against the individual defendant in his individual capacity; and

      v.  Such other legal and equitable relief as the Court deems just and proper.

## COUNT X -FOURTH AMENDMENT-FALSE IMPRISONMENT

(Fourth Amendment- False Imprisonment)

(42 USC. § 1983)

*(Walter Bernard v. County, Ignelzi and Harper)*

252.    Plaintiffs hereby incorporate by reference the above paragraphs as though fully restated herein.

253.    On May 3, 2023, County and Ignelzi caused Bernard to be unlawfully arrested through County's peace officers to remove Bernard from his home, handcuffing him and jailing him.

254.    County' s detention of Bernard was without legal authority, unsupported by reasonable suspicion of wrongdoing, probable cause to believe that a crime had been committed.

255.    Upon information and belief, Ignelzi in the absence of his jurisdiction, acted with oppression, fraud and malice in detaining Bernard when he knowingly didn't have jurisdiction over pending collateral state appellate matters pending before the Superior Court.

256.    Bernard, as a result of the direction from Ignelzi and subsequent agreement between Ignelzi and McGinley outside of the courtroom, was unlawfully and involuntarily confined against his will.

257.    Bernard was conscious during the confinement which resulted in injuries including physical discomfort and humiliation.

258.    As a direct and proximate result of being detained by County, Bernard continues to suffer emotional distress.

WHEREFORE, Plaintiffs request that the Court find and determine, after trial by jury as appropriate, that Plaintiffs suffers substantial and continuing injury as a result of

deprivation of their civil and Constitutional rights, and otherwise conduct and award the following relief:

     i.     A declaration that Defendants, jointly and severally, violated Plaintiff's civil rights;

     ii.     Injunctive relief from Defendants from acting in bad faith in violation of Plaintiff's civil rights when they have been deprived of their jurisdiction;

     iii.     Compensatory damages in excess of $75,000;

     iv.     Pre-judgment interest, attorneys' fees and costs;

     v.     Punitive damages against the individual defendants in their individual capacities; and

     vi.     Such other legal and equitable relief as the Court deems just and proper.

## COUNT XI- VIOLATION OF THIRTEENTH AMENDMENT
### (42 U.S.C. § 1983)
### *(Bernard v. Ignelzi and County)*

259.    Plaintiffs incorporate the above paragraphs as if fully set forth herein.

260.    Bernard was held in a condition of servitude through physical and legal coercion.

261.    Bernard was required to perform involuntary servitude via debt peonage on May 3, 2023 and from August 9, 2023 through August 28, 2023 when Defendants acted in clear absence of jurisdiction.

262.    Defendants' coercion caused Bernard to suffer hard both physical and non-physical harm, including but not limited to psychological, financial and reputational harm.

263.    A reasonable person of the same background and in the same circumstance would not have had to write a personal check to avoid incurring the harm of being unlawfully detained in Allegheny County Jail.

264.    In both May 2023 and August 2023, as Bernard was subjected to continual threats of harm and unlawful sanctions, the events encompassed peonage.

265.    On August 21, 2023, Bernard was required to write a check against his will or be subjected to further unlawful legal sanctions.

266.    Bernard was punished as a criminal when he was detained in clear absence of jurisdiction without the ability to see a judge from August 9, 2023 through August 21, 2023.

267.    Bernard was punished as a criminal by Defendants when he was detained in Allegheny County Jail from August 21, 2023 through August 28, 2023 until his personal check cleared.

WHEREFORE, Plaintiffs request that this Court find and determine, after a trial by jury, compensatory damages, a declaration that Defendants jointly and severely violated Bernard's Thirteenth Amendment rights pursuant to 42 U.S.C. § 1983, court costs, attorney fees, punitive damages and any other such other legal and equitable relief as this Court deems just and proper.

### COUNT XII- NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
(42 U.S.C. §1983)
*(Walter Bernard v. County and Harper)*

268.    Plaintiffs incorporate the above paragraphs as if full set forth herein.

269.     When County and Harper caused Bernard to be handcuffed and agreeing to settle the pending case, Ignelzi was acting outside the scope of his employment because the conduct was far beyond what was authorized by the law.

270.     The acts of County, McGinley, Ignelzi and Harper were done with the purpose and intent that was not related to the service in which Ignelzi or Harper are employed.

271.     County through and with Harper, Ignelzi, by their actions recklessly, willfully and intentionally, inflicted emotional distress upon Plaintiff by having law enforcement come to Plaintiffs' residence and continually issuing unlawful directives meant to harass, injure and cause harm to Plaintiff.

272.     The conduct by Defendants was extreme and outrageous because he required Bernard to be shackled while giving him an ultimatum while acting without jurisdiction.

273.     The emotional distress sustained by Bernard was severe because he was removed from his residence in front of neighbors and thrown in jail for exercising the Constitutional Rights of his client and himself.

274.      Defendants' extreme and outrageous conduct has caused and continues to cause severe emotional distress to Bernard.

275.     Defendants knowingly and intentionally weaponized the power of his position without legal justification and in the absence of his jurisdiction to deprive Bernard of a Constitutional right.

276.     Defendants arrived and threatened Plaintiff at his residence, causing Bernard to be jailed on May 3, 2023 go beyond all possible bounds of decency.

277.    Defendants' repetitive actions described herein throughout have caused Bernard to suffer great mental anguish as a result of Defendants' intentional misconduct atrocious behavior.

WHEREFORE, Plaintiffs request that the Court find and determine, after trial by jury as appropriate, that Plaintiffs suffers substantial and continuing injury as a result of deprivation of their civil and Constitutional rights, and otherwise conduct and award the following relief:

    i.    Compensatory damages in excess of $75,000;

    ii.    Pre-judgment interest, attorneys' fees and costs;

    iii.    Punitive damages against the individual defendant in his individual capacity; and

    iv.    Such other legal and equitable relief as the Court deems just and proper.

### COUNT XIII- MUNCIPAL LIABILITY-42 U.S.C. § 1983- RATIFICATION, INADEQUATE TRAINING, AND UNCONSTITUTIONAL CUSTOM, POLICY, OR PRACTICE
*(Plaintiffs against Defendant County)*

278.    Plaintiffs repeat and re-allege each and every allegation in this Amended Complaint with the same force and effect as if fully set forth herein.

279.    Defendant, through Ignelzi, McGinley and Harper, inclusive, acted under color of law with authority as officers for Defendant County.

280.    Defendants deprived Plaintiffs of their particular rights under the United States Constitution and aforementioned statutes.

281.    Upon information and belief, Defendant COUNTY was deliberately indifferent to the obvious consequences of its failure to train its officers adequately as it relates to providing fair civil proceedings, criminal proceedings, contempt of court proceedings, arrests, and detention.

282.    Upon information and belief, the failure of Defendant County to provide adequate training caused the deprivation of the plaintiff's rights by Defendants; that is, the County's failure to train is so closely related to the deprivation of the Plaintiffs.

283.    The aforementioned unconstitutional customs, practices, and polices, in addition to the ratification of the deficient customs, practices, and policies, are further evidenced by the number of unlawful proceedings, searches, seizures and constitutional violations, constituted repetitive unconstitutional acts, involving judicial and peace officers.

284.    By reason of the aforementioned acts and omissions, Plaintiffs have suffered and hereby claims past and ongoing economic and noneconomic mental, physical, and emotional pain and suffering/damages. Plaintiffs have suffered loss of love, companionship, affection, comfort, care, society, and future support.

285.    Accordingly, Defendant County is directly liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

### COUNT XIV- CONSPIRACY TO VIOLATE CIVIL RIGHTS -PRIVATE PARTY LIABILITY
(Fourteenth Amendment)
(42 U.S.C. § 1985(2))
*(Bernard v. Ignelzi)*

286.    Plaintiffs incorporate the above paragraphs as if fully set forth herein.

287.    Upon information and belief Judge Ignelzi acted as a private party on August 18, 2023.

288.    On August 18, 2023, Ignelzi while on vacation, made an agreement with McGinley to deprive Bernard of his liberty interest when they knew or should have known that Bernard, at the time of their agreement had been detained by County for well over 72 hours without a hearing in violation of 234 Pa. Code § 150.

289.    Ignelzi acted in his capacity as a private actor because he was not in the courthouse nor was acting in a judicial capacity. Ignelzi sought to deprive Bernard the rights secured by the Constitution.

290.    Ignelzi was a willing participant in the joint activity with McGinley as a governmental actor.

291.    The August 18, 2023 agreement taken between Ignelzi as a private individual, was under color of state law because of the significant state involvement with McGinley outside of the courtroom.

292.    The agreement was intended to interfere with Bernard's constitutionally protected rights to liberty.

293.    Ignelzi cause McGinley to exercise power with such significant encouragement that it was independent of any court decisions.

294.    McGinley's act of denying Bernard's release from Allegheny County Jail was an act in furtherance of the conspiracy between Ignelzi and McGinley to deny Bernard both federally and state protected rights.

295.    The continued deprivation of Bernard's civil rights was not the result of a state court judgment but was the result of an agreement made between Ignelzi and McGinley made prior to any state court rulings.

        WHEREFORE, Plaintiffs request that the Court find and determine, after trial by jury as appropriate, that Plaintiff suffers substantial and continuing injuries as a result of the deprivation of his civil and Constitutional rights, and otherwise conduct and award the

following relief:

     i.       A declaration that Ignelzi, violated Bernard's civil rights;

     ii.      Compensatory damages in excess of $75,000;

     iii.     Attorney fees and court costs;

     iv.     Punitive damages;

     v.      Such other legal and equitable relief as the Court deems just and proper.

### COUNT -XV- FAILURE TO INTERVENE
(Fourteenth Amendment)
(42 U.S.C. §1986)
(*Bernard v. Ignelzi, McGinley and County*)

296.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

297.    Ignelzi had personal knowledge of the conspiracy between himself and McGinley

298.    Ignelzi knew or should have known that Bernard was being in unlawfully detained by County.

299.    Ignelzi, McGinley and County had an opportunity to prevent the continually deprivation of Bernard's civil rights, yet they were instrumental in the commission of further causing injury to Bernard when he was required to remain in Allegheny County Jail in violation of his civil rights.

       WHEREFORE, Plaintiff requests that this Court find and determine, after a trial by jury as appropriate and award Plaintiff Bernard compensatory damages, punitive damages a declaration that Defendants conspired to violate Bernard's Constitutional rights and any other relief this Court deems just and proper.

## COUNT XVI- BATTERY BY A POLICE OFFICER AND ASSAULT

*(Plaintiffs against Defendant County)*

300.    Plaintiff refers to and re-allege each and every allegation contained herein.

301.    At the aforementioned date, time and place, Defendants County and Harper, and each of them, caused County's peace officers to have assaulted and battered Plaintiff Walter Bernard and used unreasonable force as Bernard at no time was an imminent threat, in violation of any law, and not likely to cause any harm to any Defendant.  Plaintiff did not consent to Defendants' wrongful, harmful, and offensive touching and neither was Defendants' touching privileged.

302.    By reason of the acts aforesaid, Decedent was placed in great fear for his safety and physical and emotional wellbeing and died.

303.    County is vicariously liable for the wrongful acts of its peace officers, including Harper, whereas a public entity is liable for injuries causes by its employees within the scope of the employment if the employee's act would subject him or her to liability.

304.    The aforementioned acts of Harper and county peace officers, and each of them, were willful, malicious and oppressive, without legal justification or legal authority and thereby justify the awarding of exemplary and punitive damages against County and Harper in a sum according to proof.

## COUNT XVII- FIRST AMENDMENT RIGHT TO COMMUNICATE

*(Walter Bernard v. Allegheny County, Philip Ignelzi and Warden Harper)*
(42 U.S.C. §1983)

305.    Plaintiffs incorporate the above paragraphs as if full set forth herein.

306.    On August 21, 2023 when Bernard was transported to Allegheny County Jail and remained in custody of Defendant Allegheny County, Bernard's phone privileges were removed without justification.

307.    Upon information and belief, Bernard continually notified multiple correctional officers for approximately three days from August 21, 2023 through August 23, 2023 that he was unable to access his account to use the telephone.  Additionally, the restricted access to communicate beyond the jail walls began immediately after he was transferred back from the Allegheny County Civil Courthouse on August 21, 2023.

308.    Defendant Allegheny County's restrictions that deprived Bernard his ability to communicate with friends, family and colleagues was an unreasonable sanction because Bernard did not have any incidents of misconduct under Allegheny County Jail's policies justifying his punishment while being unlawfully detained.

309.    Bernard's deprivation and ability to communicate was the proximate cause of Defendants' actions while unlawfully detaining Bernard in violation of his liberty interest.

310.    Bernard was unable to communicate with his attorney in anticipation for a hearing nor friends and family.  The actions by Defendants were not related to a safety risk because other similarly situated detainees were able to communicate through the use of a telephone on August 21, 2023.

WHEREFORE, Plaintiffs request that the Court find and determine, after trial by jury as appropriate, that Plaintiff's suffered a substantial injury as a result of deprivation of his civil and Constitutional rights, and otherwise conduct and award the following relief:

54

i.      Compensatory damages to be determined at trial;

ii.     Pre-judgment interest, attorneys' fees and costs;

iii.    Punitive damages against the individual defendants in their individual capacities; and

iv.     Such other legal and equitable relief as the Court deems just and proper.

### COUNT XVIII- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*(Walter Bernard v. Ignelzi, County and John Doe 7)*
*(42. U.S.C. §1983)*

311.   Plaintiffs incorporate the above paragraphs as if fully set forth herein.

312.   Defendant Ignelzi intentionally, recklessly, willfully, and without legal justification, by extreme and outrageous conduct in the absence of jurisdiction caused severe distress to Bernard.

313.   On August 18, 2023, when Ignelzi was on vacation and not acting in the scope of his employment, caused Bernard to remain incarcerated in Allegheny County Jail.

314.   Ignelzi's affirmative act of causing Bernard to be remain unlawfully detained and preventing Bernard from being released from Allegheny County Jail was an intentional demonstration of his power and threats of Bernard's liberty rights.

315.   Ignelzi knew, or had reason to know that Bernard was being unlawfully detained in Allegheny County Jail.

316.   Ignelzi knowingly and intentionally weaponized his power of his position to place Bernard in fear of bodily injury.

317.   The above-described illegal detention and initial arrest of Bernard constituted an assault and battery by Defendant John Doe 7 and Judge Ignelzi, as a result of which Bernard was injured

and sustained significant emotional distress, including loss of sleep, loss of appetite, depression and to perform daily activities of work and life.

318.   As a result of Defendants actions, Bernard has suffered and will suffer in the future from permanent residuals.

## COUNT XIX- ABUSE OF PROCESS
*(Wrongful Use of Civil Proceedings)*
*(42 U.S.C. §1983)*
*(Plaintiffs vs. All Defendants)*

319.   Plaintiffs incorporate the above paragraphs as though full set forth herein.

320.   Defendants used the legal process they knew or should have known they had no jurisdiction over matters within the exclusive jurisdiction of the appellate state court when jurisdiction had been divested from the trial court.

321.   Defendants used their authority and positions as government actors for the purpose of depriving Plaintiffs of their Constitutional Rights in the clear absence of jurisdiction.

322.   Defendant's actions caused harm to the Plaintiffs and led to Bernard being unlawfully jailed.

323.   Ignelzi obtained testimony from Bernard by means of coercion through threats and intimidation while causing Bernard to be removed from his residence.

324.   Defendants used their positions of authority for the purposes of harassing and intimidating Plaintiffs which was a misuse of what the legal system was intended for.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs, WALTER BERNARD and WYNTON BERNARD pray that this Court enter a judgment in their favor against the herein named Defendants and award:

A.  Declaratory relief as mentioned above that Defendant's conduct to be unconstitutional;

B.  Injunctive relief from compelling Plaintiffs to speak as a condition of their liberty interests.

C.  Injunctive relief from Defendant Judge Ignelzi's agents from harassing Plaintiffs outside of their job duties such as the lewd acts of giving Plaintiffs the middle finger for the purposes of intimidation.

D.  Injunctive relief from Allegheny County for unlawfully detaining Plaintiffs without probable cause nor a valid warrant.

E.  Reasonable costs and attorney fees included in bringing this action;

F.  General damages in an amount to be proven at trial to each and every claims herein;

G.  Punitive damages in an amount to be determined at trial;

H.  Such other relief as the Court deems just and proper.

**PLAINTIFFS HEREBY DEMAND A JURY TRIAL**

Respectfully submitted,

By: _/s/Walter A. Bernard, Esquire_
Walter A. Bernard, Esquire
PA ID 321994
**Law Offices of Walter A Bernard, PLLC**
1150 First Ave Suite 531
King of Prussia, PA 19406
(215) 261-7423
walt@waltbernardlaw.com

Rodney S. Diggs, Esquire
Pro Hac Vice
CA Bar No. 274449
Ryan Duckett, Esquire
_Pro Have Vice forthcoming_
**Ivie McNeill Wyatt Purcell & Diggs**
444 South Flower Street, 18th Floor
Los Ángeles, CA 90071
Tel: (213) 489- 0028
Fax: (213) 498-0552
rdiggs@imwlaw.com
_Counsel for Plaintiffs_