IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WALTER A. BERNARD *and* WYNTON BERNARD,<br><br>*Plaintiffs*,<br><br>v.<br><br>PHILLIP A. IGNELZI, *et al.*<br><br>*Defendants* | Civil Action No. 2:23-cv-1463<br><br>Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiffs Walter A. Bernard and Wynton A. Bernard (collectively, "Plaintiffs") filed this action for monetary damages as well as injunctive and declaratory relief alleging violations of their constitutional rights stemming from a case in the Allegheny County Court of Common Pleas, Pennsylvania – *9795 Perry Highway Management, LLC v. Walter Bernard, et al*, No. GD-20-007843 – that Defendants, Judges Philip A. Ignelzi ("Judge Ignelzi") and Mary C. McGinley ("Judge McGinley") (collectively, "Judicial Defendants") presided over in part. (ECF No. 1). Pending before the Court is the Judicial Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint. (ECF No. 50). The Court holds that the Judicial Defendants are protected by absolute judicial immunity. The claims against them will, therefore, be dismissed.

### I. Factual Background

Wynton A. Bernard is a professional baseball player. Walter A. Bernard is an attorney who maintains law offices in the Eastern and Western Districts of Pennsylvania. (ECF No. 43, p. 4). Together, they own a family entertainment escape room business, Amaze Me LLC, that was

1

rendered inoperable due to COVID-19 governmental restrictions. (*Id.* at 5). Their landlord, 9795 Perry Highway Management, LLC ("Landlord"), initiated legal proceedings against them as a result of their failure to pay rent.[1] Specifically, on July 22, 2020, Landlord filed a Complaint in Confession of Judgment and Notice of Entry of Judgment by Confession against Plaintiffs.

Plaintiffs unsuccessfully sought to open or strike the judgment and then unsuccessfully appealed to the Pennsylvania Superior and Supreme Courts. A review of the docket does not indicate that Plaintiffs posted a supersedeas bond at the initiation of the appeal. During the pendency of Plaintiffs' appeal, Landlord served post-judgment discovery in the aid of execution. Plaintiffs repeatedly ignored written discovery requests from Landlord and refused to participate in the discovery process. As a result, Landlord filed numerous motions to compel responses and for sanctions, which were granted on July 6, 2022, February 21, 2023 and April 27, 2023.[2] In the April 27, 2023 Order, Judge Ignelzi stated, ""[f]ailure to comply with this Order will result in both Walter Bernard and Wynton Bernard being held in Contempt of Court and being taken into custody by the Allegheny County Sheriff's Office and lodged at the Allegheny County Jail until such time as they purge themselves of Contempt." *See* Allegheny County Civil Docket No. GD-20-00784.

---

[1] The Court may consider matters of which it may take judicial notice including matters of public record, like public docket sheets, and it has done so in this case. It has reviewed the docket for No. GD-20-00784. *See https://dcr.alleghenycounty.us/Civil/LoginSearch.aspx?ReturnUrl=%2fCivil.* Pennsylvania's Unified Judicial System provides online access to appellate court docket sheets, and the Court has taken notice of Plaintiffs' appellate proceedings related to No. GD-20-00784 docketed at No. 926 WDA 2021, No. 179 WAL 2022, No. 352 WDA 2023, and No. 754 WDA 2023. *See https://ujsportal.pacourts.us/CaseSearch.* The Court has relied upon the docketed information in the cases in recounting pertinent facts throughout this opinion.

[2] On March 29, 2023, Plaintiffs appealed from a March 21, 2023 order setting a hearing date to determine the amount of credit. The appeal was docketed in the Pennsylvania Superior Court at No. 352 WDA 2023. It was quashed on June 2, 2023, and on June 23, 2023, the Pennsylvania Superior Court denied Plaintiffs' application for reconsideration.

After Plaintiffs failed to respond to the discovery deadline, Walter A. Bernard was taken into custody on May 3, 2023 by Allegheny County sheriffs. Instead of being taken to the Allegheny County Jail, he was brought directly before Judge Ignelzi. A hearing was held during which Walter A. Bernard was given the option to either answer Landlord's discovery requests or pay the outstanding judgment. Judge Ignelzi ordered Walter A. Bernard released, and gave Plaintiffs one final chance to provide the requested discovery or pay the outstanding judgment before a warrant was issued for their arrest. (ECF No. 43, pp. 16-20).

Plaintiffs again failed to respond to the discovery requests and Landlord again sought sanctions. Judge Ignelzi issued a warrant for Plaintiffs' arrest on May 16, 2023. (ECF No. 50-5).[3] On August 9, 2023, Walter A. Bernard was arrested, and a contempt hearing was scheduled for August 21, 2023. (ECF No. 43, pp. 22).[4] On August 18, 2023, an emergency petition (filed on August 15, 2023) was presented to Judge McGinley seeking Walter A. Bernard's release from imprisonment. Judge McGinley denied the motion. (ECF No. 43, pp. 26-27). On August 21, 2023, a contempt hearing occurred before Judge Ignelzi. Plaintiffs ultimately agreed to settle the case by paying Landlord a portion of the judgment. Judge Ignelzi purged the contempt, and Walter A. Bernard was released from custody. (*Id.*).

## II. STANDARD OF REVIEW

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*,

---

[3] This order was not docketed until June 5, 2023. On July 5, 2023, Plaintiffs appealed the order. That appeal is docketed in the Pennsylvania Superior Court at No. 754 WDA 2023, and it remains pending.

[4] Plaintiffs initiated their case in this Court on August 12, 2023. (ECF No. 1).

556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

### III. ANALYSIS

Counts I, II, IV, V, VI, VII, IX, X, XI, XIV, XV, XVII, XVIII, and XIX in the second amended complaint contain claims against Judge Ignelzi. Counts I, V, VI, VII, XV and XIX contain claims against Judge McGinley. (ECF No. 43). Except for Count XIV (which is brought under 42 U.S.C. § 1985(2)) and Count XV (which is brought under 42 U.S.C. § 1986),[5]

---

[5] Section 1986 provides for a private right of action against anyone who knew of a conspiracy in violation of § 1985 and failed to prevent the wrong. Without a valid claim under § 1985, recovery cannot occur under § 1986.

Plaintiffs' claims are brought under 42 U.S.C. § 1983.[6] Plaintiffs have misconstrued the reach of §§ 1983, 1985 and 1986 as to the Judicial Defendants. For the reasons explained below, all claims against them will be dismissed.

### A. The official capacity claims will be dismissed.

Plaintiffs consent to the dismissal of their claims against the Judicial Defendants in their official capacity. The Court notes that these claims are, in fact, claims against the Allegheny County Court of Common Pleas, a state entity.[7] The judges are considered arms of the state. Because state entities are entitled to Eleventh Amendment immunity on such claims, the judges are as well.[8] *See Benn v. First Judicial Dist. Of Pa.*, 426 F. 3d 233, 241 (3d Cir. 2005); *see also Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008); Pa. Const. art. V, § 1. Therefore, the Court will dismiss all claims against the Judicial Defendants in their official capacity.

---

[6] By its terms, § 1983 does not create a substantive right; it merely provides a method for vindicating federal rights conferred by the United States Constitution and the federal statutes that it describes. *Baker v. McCollan*, 443 U.S. 137 (1979). In order to establish a claim under § 1983, a plaintiff must demonstrate (1) a violation of a right secured by the Constitution and the laws of the United States and that (2) the alleged deprivation was committed by a person acting under color of state law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999).

[7] "All courts and agencies of the unified judicial system . . . are part of 'Commonwealth government' and thus are state rather than local agencies." *Callahan v. City of Philadelphia*, 207 F.3d 668, 672 (3d Cir. 2000) (citation omitted).

[8] "Immunity from suit in federal court under the Eleventh Amendment is designed to preserve the delicate and 'proper balance between the supremacy of federal law and the separate sovereignty of the States.'" *Karns v. Shanahan*, 879 F.3d 504, 512 (3d Cir. 2018) (quoting *Alden v. Maine*, 527 U.S. 706, 757 (1999)). It "serves two fundamental imperatives: safeguarding the dignity of the states and ensuring their financial solvency." *Id.* Thus, "the Constitution does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000). Pennsylvania has not waived its Eleventh Amendment immunity. *See* 42 Pa. C.S.A. § 8521(b).

5

**B. The individual capacity claims will be dismissed as they are barred by the doctrine of absolute judicial immunity.**

There are two kinds of immunity under § 1983: qualified immunity and absolute immunity. *Yarris v. Cty. of Delaware*, 465 F.3d 129, 134-35 (3d Cir. 2006). Although most public officials are entitled to only qualified immunity, public officials who perform "special functions" are entitled to absolute immunity. *Id.* (quoting *Butz v. Economou*, 438 U.S. 478, 508 (1978)). "[A]bsolute immunity attaches to those who perform functions integral to the judicial process." *Williams v. Consovoy*, 453 F.3d 173, 178 (3d Cir. 2006) (citation omitted). "This immunity was and still is considered necessary 'to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.'" *McArdle v. Tronetti*, 961 F.2d 1083, 1084 (3d Cir. 1992) (quoting *Butz*, 438 U.S. at 512).

Absolute judicial immunity shields the Judicial Defendants from any suit for monetary damages arising from their judicial acts. Judges are entitled to absolute immunity from claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (per curiam). An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). This is a low threshold. "Generally ... 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)). Thus, judicial immunity shields a judge from liability for judicial acts even if those acts were taken in error, if they were done maliciously, if they were in excess of the judge's authority, if the judge committed grave procedural errors, or if the judge's

actions were unfair or controversial. *Gallas*, 211 F.3d at 769. A judge will be subject to liability only when he or she has acted in the clear absence of all jurisdiction. *Id.*

The Court's analysis must focus on the "general nature of the challenged action, without inquiry into such 'specifics' as the judge's motive or the correctness of his or her decision." *Id.* All of Plaintiffs' allegations in the second amended complaint pertain to conduct or rulings that the Judicial Defendants undertook in their judicial capacity. Holding hearings and issuing warrants for failure to respond, are judicial acts. *See Figueroa v. Blackburn*, 208 F.3d 435, 444 (3d Cir. 2000) (reasoning that presiding over cases, finding a party in contempt, and ordering a party to jail are judicial acts, regardless of whether the judge's determinations are right or wrong). Civil contempt orders in Pennsylvania are judicial acts as well. The purpose of a civil contempt order is to coerce the contemnor to comply with a court order. *See Gunther v. Bolus*, 853 A.2d 1014, 1016 (Pa. Super. 2004). The law is well established in Pennsylvania that "[c]ourts possess an inherent power to enforce their orders by way of the power of contempt." *Dep't of Env'tl Prot. v. Cromwell Twp., Huntingdon Cnty.*, 32 A.3d 639, 653 (Pa. 2011) (quoting *Commonwealth v. Bowden*, 838 A.2d 740, 760 (Pa. 2003)). "Courts have broad discretion in fashioning and administering a remedy for civil contempt." *Mulligan v. Piczon*, 739 A.2d 605, 611 (Pa. Cmwlth. 1999), *aff'd*, 779 A.2d 1143 (Pa. 2001). Civil confinement pursuant to a civil contempt order is a valid method of assuring compliance with judgments. *Tauro v. Allegheny Cnty.*, 371 F. App'x 345, 348 (3d Cir. 2010) (citing *Chadwick v. Janecka*, 312 F.3d 597, 613 (3d Cir. 2002)). Thus, the arrest and imprisonment orders issued for Plaintiffs after their noncompliance with court orders were judicial acts.

Plaintiffs do not dispute that all acts taken by the Judicial Defendants were done in their judicial capacity. Instead, they contend that the Judicial Defendants lacked jurisdiction.

Plaintiffs argue that the judges were divested of jurisdiction due to the filing of Plaintiffs' interlocutory appeal of discovery matters to the Pennsylvania Superior Court. The Court disagrees. The Court holds that the Judicial Defendants had jurisdiction, and that it is impossible to construe any of their actions as taken in the clear absence of jurisdiction.

The procedural history of this case is important to the Court's immunity analysis. Judgment was entered by confession against Plaintiffs in the Allegheny County Court of Common Pleas on July 24, 2020. Plaintiffs filed an appeal at No. 926 WDA 2021 in the Pennsylvania Superior Court from the order denying their petition to strike or open the confessed judgment for $100,882.37 entered against them and in favor of Landlord. There is nothing in the record of the state court proceedings that shows that Plaintiffs posted a bond or other security at or after the filing of the appeal. *See* Pa. R.A.P. 1731. As such, there was nothing preventing Landlord from initiating execution proceedings. *See* Pa. R.A.P. 1735. Discovery in aid of execution is an ordinary part of the execution process. The docket from the state court action shows that Landlord served interrogatories and requests for production of documents in aid of execution, that Plaintiffs did not respond, that Landlord filed a motion to compel, which Judge Patrick Connelly granted on October 14, 2021—giving Plaintiffs twenty days to respond. (ECF No. 50-2, p. 5).[9]

On March 29, 2022, the Pennsylvania Superior Court affirmed the Allegheny County Court of Common Pleas' order denying Plaintiffs' motion to open or strike the judgment. Plaintiffs then filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court on July 1, 2022 at No. 179 WAL 2022. Notably, in November 2022, over a year after their appeal was filed, Plaintiffs filed a Petition to Set Amount of Bond in the Allegheny County Court of

---

[9] The docket, as previously noted, is publicly available at
*https://dcr.alleghenycounty.us/Civil/LoginSearch.aspx?ReturnUrl=%2fCivil.*

Common Pleas. (ECF No. 50-2, p. 5). However, the bond that they sought was not a supersedeas bond governed by the Pennsylvania Rules of Appellate Procedure (which would effectuate a stay of proceedings pending the ongoing appeal[10]), but a bond to release property from a levy pursuant to Pa. R.C.P. 3119. Plaintiffs' petition acknowledged that there had been no levy but believed it may be imminent. In any event, a bond issued under Pa. R.C.P. 3119 does not effectuate a general supersedeas during the pendency of an appeal. By December 1, 2022 Order, a hearing on the bond request was set in the Allegheny County Court of Common Pleas for January 12, 2023. At some point, the parties agreed to indefinitely postpone the hearing on the bond petition.

On December 22, 2022, the Pennsylvania Supreme Court denied review at No. 179 WAL 2022. Plaintiffs asked the Supreme Court for reconsideration. On February 23, 2023, the Court denied Plaintiffs' reconsideration petition, thus terminating the appeal and finalizing the judgment order against Plaintiffs.

As explained above, the dockets for the state court proceedings show that Landlord continued to pursue discovery in aid of execution during the pendency of the appeal. Plaintiffs continued in their refusal to participate and Landlords continued to seek judicial redress. On February 21, 2023, Judge Ignelzi issued an Order mandating that Plaintiffs respond to the discovery in aid of execution or face sanctions. Plaintiffs then filed a Petition to Determine a Credit Amount to Satisfy Judgment. (ECF No. 52-2, p. 5). Again, this petition asserted a claim for relief under Pa. R.C.P. 3119 (governing relief from a levy) even though no property had been

---

[10] Even if Plaintiffs had posted an appropriate appellate bond, it would only serve as a stay on proceedings thereafter, it would not stay execution proceedings already initiated. *See* Pa. R.A.P. 1735(a) ("The filing of an appropriate security in the amount required by or pursuant to this chapter within 30 days from the entry of the order appealed from shall stay any execution theretofore entered. The filing of such appropriate security after the 30 day period shall stay only executions or distributions thereafter issued or ordered.").

levied. Judge McGinley set a hearing on the petition by March 21, 2023 Order, but held that discovery in aid of execution would continue (rejecting Plaintiffs' request for a stay). Plaintiffs filed an appeal to the Superior Court of Pennsylvania ("the Second Appeal") from Judge McGinley's Order. In their Concise Statement of Issues Complained of on Appeal pursuant to Pa. R.C.P. 1925(b), Plaintiffs explained that they were appealing the portion of Judge McGinley's order that permitted discovery in aid of execution to proceed. (ECF No. 50-2, p. 4). Plaintiffs filed an Amended Notice of Appeal that highlighted that the Second Appeal was lodged under the collateral order doctrine. Significantly, by its very nature, a collateral order appeal does not divest a trial court of jurisdiction.

On May 16, 2023, the Pennsylvania Superior Court issued the following show cause order:

> Upon consideration of the notice of appeal and docketing statement filed by Appellants, the appeal is taken from the March 21, 2023 order (the "Order") setting a hearing date "to determine the amount of credit [Appellants] are entitled to." Tr. Ct. Order, 3/21/2023. The Order further directed that "[discovery] in aid of execution may proceed" and stayed execution until such a time when the trial court determined the credit amount. *Id.* In their docketing statement and amended notice of appeal, Appellants indicate that they appeal pursuant to Pa. R.A.P. 313 (permitting appeal from collateral order). Chapter 3 of the Rules of Appellate Procedure provides for the appealability of specific interlocutory orders as of right or by permission, collateral orders, and final orders. Pa. R.A.P. 311, 312, and 313. Specifically, Rule 313 defines a "collateral order" as "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa. R.A.P. 313(b). Where an order satisfies the three-pronged test set forth in Rule 313(b), this Court may exercise appellate jurisdiction over the order, even though it is not a final order pursuant to Pa.R.A.P. 341. Rae v. Pennsylvania Funeral Directors Ass'n, 977 A.2d 1121, 1125 (Pa. 2009). Accordingly, Appellants are DIRECTED to show cause, in the form of a letter addressed to the Prothonotary of this Court with a copy to opposing counsel, as to how the Order satisfies the three-prong test set forth in Rule 313(b).

10

*See* No. 352 WDA 2023 *available at https://ujsportal.pacourts.us/CaseSearch*. Then, on June 2, 2023, the Second Appeal was quashed for Plaintiffs' failure to respond to the show cause order. And on June 23, 2023, the Pennsylvania Superior Court denied Plaintiffs' application for reconsideration.

The Court engaged in an in-depth examination of the state court case's procedural history, including the two appeals, because it is relevant to the critical question controlling this Court's immunity analysis—did the Judicial Defendants lack all jurisdiction when they engaged in the conduct forming the basis of Plaintiffs' claims? They clearly did not. Rather, the state court record shows that, notwithstanding the appeals, the Allegheny County Court of Common Pleas, and the Judicial Defendants, retained jurisdiction over the proceedings relating to discovery in aid of execution and Plaintiffs' contemptuous conduct therein. Plaintiffs never posted security during the first appeal or otherwise obtained a supersedeas bond. The second appeal was purportedly filed under the collateral order doctrine which did not divest jurisdiction from the trial court. Because the Judicial Defendants had jurisdiction, they are immune from Plaintiffs' action against them in this Court.

Moreover, even if the Judicial Defendants were wrong about their ongoing jurisdiction over the execution process, immunity still protects them. It is firmly established that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump*, 435 U.S. at 356–57 (citation omitted); *see also Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985) (discussing judicial immunity). Here, the facts and procedural history dispel any reasonable contention that the Judicial Defendants would have perceived a "clear absence of all jurisdiction."

The Court holds that the Judicial Defendants are protected by judicial immunity, and all claims against them in their individual capacity will be dismissed.

## IV. CONCLUSION

For these reasons, the Court will grant the Judicial Defendants' motion to dismiss and terminate them as parties to this action. An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

____4/19/24_____
Date