IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WALTER A. BERNARD *and* WYNTON BERNARD,<br><br>*Plaintiffs,*<br><br>v.<br><br>PHILLIP A. IGNELZI, *et al.*<br><br>*Defendants* | Civil Action No. 2:23-cv-1463<br><br>Hon. William S. Stickman IV |

<u>**MEMORANDUM OPINION**</u>

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiffs Walter A. Bernard and Wynton A. Bernard (collectively, "Plaintiffs") filed this action for monetary damages as well as injunctive and declaratory relief alleging violations of their constitutional rights stemming from a case in the Allegheny County Court of Common Pleas, Pennsylvania – *9795 Perry Highway Management, LLC v. Walter Bernard, et al*, No. GD-20-007843. (ECF No. 1). Pending before the Court is Defendants Allegheny County ("County"), Allegheny County Jail ("County Jail"), and Orlando Harper's ("Harper") motion to dismiss Plaintiffs' third amended complaint ("Third Amended Complaint").[1] (ECF No. 84).

I. **FACTUAL BACKGROUND**

Wynton A. Bernard is a professional baseball player. Walter A. Bernard is an attorney who maintains law offices in the Eastern and Western Districts of Pennsylvania. (ECF No. 71, p. 3). Together they own a family entertainment escape room business, Amaze Me LLC, that was

---

[1] The Third Amended Complaint consists of fourteen counts. "Count II" is used in the numbering of two different counts, and there is no "Count XI." All the "John Doe" defendants are seemingly employees of Defendant Allegheny County Sheriff's Office. (ECF No. 71).

1

rendered inoperable due to COVID-19 governmental restrictions. (*Id.* at 5). Their landlord, 9795 Perry Highway Management, LLC ("Landlord"), initiated legal proceedings against them as a result of their failure to pay rent.[2] Specifically, on July 22, 2020, Landlord filed a Complaint in Confession of Judgment and Notice of Entry of Judgment by Confession against Plaintiffs.

Plaintiffs unsuccessfully sought to open or strike the judgment and then unsuccessfully appealed to the Pennsylvania Superior and Supreme Courts. A review of the docket does not indicate that Plaintiffs posted a supersedeas bond at the initiation of the appeal. During the pendency of Plaintiffs' appeal, Landlord served post-judgment discovery in the aid of execution. Plaintiffs repeatedly ignored written discovery requests from Landlord and refused to participate in the discovery process. As a result, Landlord filed numerous motions to compel responses and for sanctions, which were granted on July 6, 2022, February 21, 2023 and April 27, 2023.[3] In an April 27, 2023 Order, Judge Phillip A. Ignelzi ("Judge Ignelzi") stated, ""[f]ailure to comply with this Order will result in both Walter Bernard and Wynton Bernard being held in Contempt of Court and being taken into custody by the Allegheny County Sheriff's Office and lodged at the Allegheny County Jail until such time as they purge themselves of Contempt." *See* Allegheny County Civil Docket No. GD-20-00784.

---

[2] The Court may consider matters of which it may take judicial notice including matters of public record, like public docket sheets, and it has done so in this case. It has reviewed the docket for No. GD-20-00784. *See https://dcr.alleghenycounty.us/Civil/LoginSearch.aspx?ReturnUrl=%2fCivil.*
Pennsylvania's Unified Judicial System provides online access to appellate court docket sheets and the Court has taken notice of Plaintiffs' appellate proceedings related to No. GD-20-00784 docketed at No. 926 WDA 2021, No. 179 WAL 2022, No. 352 WDA 2023, and No. 754 WDA 2023. *See https://ujsportal.pacourts.us/CaseSearch.* The Court has relied upon the docketed information in the cases in recounting pertinent facts throughout this opinion.

[3] On March 29, 2023, Plaintiffs appealed from a March 21, 2023, order setting a hearing date to determine the amount of credit. The appeal was docketed in the Pennsylvania Superior Court at No. 352 WDA 2023. It was quashed on June 2, 2023, and on June 23, 2023, the Pennsylvania Superior Court denied Plaintiffs' application for reconsideration.

After Plaintiffs failed to respond to the discovery deadline, Walter A. Bernard was taken into custody on May 3, 2023, by Allegheny County sheriffs. Instead of being taken to the Allegheny County Jail, he was brought directly before Judge Ignelzi. A hearing was held during which Walter A. Bernard was given the option to either answer Landlord's discovery requests or pay the outstanding judgment. Judge Ignelzi ordered Walter A. Bernard released and gave Plaintiffs one final chance to provide the requested discovery or pay the outstanding judgment before a warrant was issued for their arrest. (ECF No. 71, pp. 16-20).

Plaintiffs again failed to respond to the discovery requests and Landlord again sought sanctions. Judge Ignelzi issued a warrant for Plaintiffs' arrest on May 16, 2023. (ECF No. 50-5).[4] On August 9, 2023, Walter A. Bernard was arrested and a contempt hearing was scheduled for August 21, 2023. (ECF No. 71, pp. 20-23).[5] On August 18, 2023, an emergency petition (filed on August 15, 2023) was presented to Judge Mary C. McGinley ("Judge McGinley") seeking Walter A. Bernard's release from imprisonment. Judge McGinley denied the motion. (*Id.* at 24-24). On August 21, 2023, a contempt hearing occurred before Judge Ignelzi. Plaintiffs ultimately agreed to settle the case by paying Landlord a portion of the judgment. Judge Ignelzi purged the contempt and Walter A. Bernard was released from custody. (*Id.* at 24-25).

## II. STANDARD OF REVIEW

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A

---

[4] This order was not docketed until June 5, 2023. On July 5, 2023, Plaintiffs appealed the order, and it was docketed in the Pennsylvania Superior Court at No. 754 WDA 202. The appeal was dismissed on May 8, 2024 as moot. Reargument was denied on July 18, 2024.

[5] Plaintiffs initiated their case in this Court on August 12, 2023. (ECF No. 1). They are now on their Third Amended Complaint. The Court has already dismissed all claims against the Judicial Defendants, Judges Ignelzi and McGinley, and entered judgment in their favor. (ECF Nos. 61-63, 90-92). Plaintiffs are pursuing an appeal in the United States Court of Appeals for the Third Circuit at No. 24-1945.

plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

### III.   ANALYSIS

Counts I, II, III, IV, V, VI, VII, VIII, IX, X, XII, XIII are against the County. Counts II, III, V, VIII, IX, XII are against Harper. Count XIII is against the County Jail. Except for Count XIII (which is allegedly an "alter ego" claim that asserts no discrete cause of action), Plaintiffs'

4

claims are brought under 42 U.S.C. § 1983.[6] For the reasons explained below, all claims against the County, County Jail, and Harper will be dismissed.

### A. The County Jail is not a proper defendant and the claims against it will be dismissed.

The County Jail is a division of the County, not an independent entity. *See* 61 P.S. § 390.715 (authorizing counties to establish county prisons). Defendants are correct that "[a] division of a government unit is not itself the government unit and, as such, is not a person capable of being sued under 42 U.S.C. § 1983." (ECF No. 85, pp. 14-15) (citations omitted). *See Phillips v. Northampton Cnty.*, No. 14-6007, 2016 WL 4944221, at *10 (E.D. Pa. Sept. 14, 2016) (citing *Phillips v. Miller*, No. 3:-09-CV-0555, 2010 WL 771793, at *2 (M.D. Pa. Feb. 26, 2010)); *Birckbichler v. Butler Cnty. Prison*, No. 07-1655, 2009 WL 2986611, at *5 (W.D. Pa. Sept. 17, 2009) (collecting decisions holding that a county jail is not a legal entity amenable to suit). Therefore, the Court will dismiss with prejudice all claims against the County Jail as amendment would be futile.[7] *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (a court may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility).

---

[6] By its terms, § 1983 does not create a substantive right; it merely provides a method for vindicating federal rights conferred by the United States Constitution and the federal statutes that it describes. *Baker v. McCollan*, 443 U.S. 137 (1979). In order to establish a claim under § 1983, a plaintiff must demonstrate (1) a violation of a right secured by the Constitution and the laws of the United States and that (2) the alleged deprivation was committed by a person acting under color of state law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999).

[7] "An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss." 3 James Wm. Moore et al., Moore's Federal Practice ¶ 15.15 (3d ed. 2024).

## B. All claims against Harper will be dismissed.

Plaintiffs allege Harper is responsible for the unconstitutional detention and imprisonment of Plaintiff Walter A. Bernard in the County Jail, and that he had authority over individuals employed by the Allegheny County Sheriff's Office. This individual capacity claim will be dismissed for failure to state a claim.

First, Harper is not employed by the Allegheny County Sheriff's Office. He is the warden of the Allegheny County Jail which is operated by the County and a separate legal entity from the Allegheny County Sheriff's Office. Harper has no supervisory authority over employees of the Allegheny County Sheriff's Office as that authority is held solely by the sheriff pursuant to the Pennsylvania Constitution, Pennsylvania statutes, and the Administrative Code of Allegheny County. *See* Pa. Const. art. IX, § 4; 13 P.S. § 40; 42 Pa. C.S. § 2921; Allegheny Cty. Admin. Code §§ 5-201.03, 5-601.02.

Second, Plaintiffs' allegations as to Harper are highly generalized and rest on the belief that he is liable based on his supervisory position. The fact that Harper is the official generally responsible for managing the County Jail does not adequately allege his personal involvement, whether on an individual or supervisory level. A supervisor can be liable under § 1983 if they, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm. *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989). Alternatively, a supervisor can be personally liable if they participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct. *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995). Nothing in the Third Amended Complaint

6

adequately describes how Harper was involved in the deprivation of Plaintiff Walter A. Bernard's constitutional rights under either theory of supervisory liability.

Third, the action attributed to Harper–imprisoning Plaintiff Walter A. Bernard in the County Jail–was performed pursuant to two facially valid orders of court.[8] "[A]bsolute immunity attaches to those who perform functions integral to the judicial process." *Williams v. Consovoy*, 453 F.3d 173, 178 (3d Cir. 2006) (citation omitted). If a warden takes action pursuant to a facially valid court order, he is entitled to absolute immunity from § 1983 lawsuits for damages. *Hamilton v. Leavy*, 322 F.3d 776, 782–83 (3d Cir. 2003); *see also Coudriet v. Vardaro*, 545 F. App'x 99, 103 (3d Cir. 2013) (holding that the warden was entitled to quasi-judicial immunity for claims that he illegally detained the plaintiff in connection with fraudulent court orders); *McGeachy v. Doe*, 444 F. App'x 510, 512 (3d Cir. 2011) (holding that several defendants, including the warden, were entitled to absolute immunity for acting in accordance with a facially valid court order regarding an extradition). As the warden of the County Jail, Harper was bound to act pursuant to the facially valid state court orders committing Plaintiff Walter A. Bernard to the jail.

For these reasons, the Court will dismiss with prejudice all claims against Harper as it finds further amendment to be futile.[9] Plaintiffs are on their Third Amended Complaint. The underlying facts have not changed and the nature of Plaintiffs' claims against Harper cannot survive a motion to dismiss.

---

[8] All of Plaintiffs' challenges to the orders issued by the state court judges for Plaintiff Walter A. Bernard's imprisonment have proven unsuccessful in the state appellate courts.

[9] As the County Jail does not have the capacity to be sued, Harper cannot be sued in his official capacity and any such claim against him in that capacity is dismissed with prejudice. *See Horne v. District Attorney York Cnty.*, 499 F. App'x 140, 142 (3d Cir. 2012) (Eleventh Amendment barred inmate's § 1983 claims against warden of the York County Prison in his official capacity).

7

### C. All claims against the County will be dismissed.

A municipality or other local government may be liable under § 1983 if it subjects a person to a deprivation of rights or causes a person to be subjected to such a deprivation. *See Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 692 (1978). Under § 1983, a local government is responsible only for "their own illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (citation omitted). It is not vicariously liable under § 1983 for their employees' actions. Thus, the County may be held liable under § 1983 only when its policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. *See Monell*, 436 U.S. at 694. Within this framework, the Third Circuit has clarified that there are three ways a municipality can be liable for the torts of its employees. *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005). "First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy; third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes." *Id.* (internal citations omitted).

Plaintiffs seemingly believe that the County, County Jail, and Allegheny County Sheriff's Office "are one and of the same entities in ALLEGHENY COUNTY under the same umbrella, but consisting of different departments, where[]as each department ratifies the actions of the others, operates under the same framework, share resources, receive finances from the same source to share and divide within, comingle assets, have a intertwined unity of interest and operate under the same commend, such that any result against one will require a finding against

the other for the interests of justice. Therefore, [they] are the alter egos of each other." (ECF No. 71, p. 4). The County argues that it is legally independent from both the Allegheny County Sheriff's Office (and its deputy sheriffs) and the Allegheny County Court of Common Pleas (and its judges), and it is not liable under § 1983 for actions against these separate governmental entities. (ECF No. 85, pp. 7-13). The Court holds that Plaintiffs are proceeding under a misunderstanding as to the legal status of the governmental entities they named as defendants.[10]

Plaintiffs cannot sue the County for the actions of the Allegheny County Sheriff and its deputies (i.e., John Doe 1 through John Doe 20) for serving/enforcing court orders issued by the judges of the Allegheny County Court of Common Pleas. In reaching this conclusion, the Court was guided by *McMillian v. Monroe Cnty. Ala.*, 520 U.S. 781 (1997). In *McMillian*, a man whose criminal conviction was overturned because of State misconduct after six years in prison brought suit against Monroe County in Alabama based on the conduct of the county's sheriff. *Id.* at 783–84. The Supreme Court of the United States ultimately concluded that "Alabama sheriffs, when executing their law enforcement duties, represent the State of Alabama, not their counties." *Id.* at 793. To come to this conclusion, the Supreme Court turned to Alabama law and found the following significant: Alabama's constitution includes sheriffs as part of the executive branch of the state government; Alabama's Supreme Court looked at the history of sheriffs in the state and concluded that they were considered to be executive officers of the state; and the Alabama Code provides sheriffs with the authority to enforce state criminal law, while the counties have no law enforcement power and so cannot control the sheriff's performance in enforcing criminal law

---

[10] A court's task is to "identify those who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). For this, the Court must look to state law. *Id.*

9

(while the Governor and the attorney general do have this kind of control). *Id.* at 787–91. The Supreme Court acknowledged that sheriffs are paid out of the county treasury, the sheriff's jurisdiction is limited to his county, and the sheriff is elected locally by voters in his county; but it held that these facts showed that the county had only "an attenuated and indirect influence over the sheriff's operations" and did not outweigh the law which established sheriffs as Alabama state officials when executing their law enforcement duties. *Id.* at 791–93.

The County and the Allegheny County Sheriff are legally distinct entities. In Pennsylvania, the office of sheriff is a constitutional one: "[c]ounty officers shall consist of ... sheriffs...." Pa. Const. art. IX, § 4. Although the Pennsylvania Constitution recognizes the sheriff's office, it does not define its powers. There are two statutory provisions which specifically reference the sheriff's duties. First, sheriffs and deputy sheriffs are required to perform all those duties authorized or imposed on them by statute. 13 P.S. § 40. Second, under the Pennsylvania Judicial Code, "[t]he sheriff, either personally or by deputy, shall serve process and execute orders directed to him pursuant to law." 42 Pa. C.S. § 2921. Thus, the Pennsylvania statutes expressing a sheriff's duties address court-related functions. The sheriff also has common law power and authority to arrest without a warrant for all crimes committed in his presence. *Commonwealth v. Leet*, 641 A.2d 299 (Pa. 1994). The Administrative Code of Allegheny County further specifies that the Allegheny County Sheriff's Office is an "Independently elected County Official[ ]," Allegheny Cty. Admin. Code § 5-201.03, vested with its own powers, duties and responsibilities including the "hiring, supervising and terminating of all personnel within their respective offices," § 5-601.02. *See also Shim v. Allegheny County, Pa.*, No. 23-393, 2024 WL 1095811, *1 (W.D. Pa. Mar. 13, 2024) (holding that Allegheny County "Sheriff's Office is an 'independently elected County Official[],' vested

with its own 'powers, duties, and responsibilities,' regarding 'hiring, supervising, and terminating of all [sic] personnel within their respective offices,' not Allegheny County."); *Day v. Westmoreland Cty.*, 2021 WL 5015774, at *6 (W.D. Pa. Oct. 28, 2021) (applying the factors set forth in *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992) and holding, as a matter of law, that the county was not a joint employer based on the Sheriff's Office's statutory authority).[11]

Plaintiffs have not alleged that the County controlled the daily activities of the Allegheny County Sheriff's Office. Nor could they because the County cannot appoint or remove the sheriff, and it has no ability to overrule his exclusive authority in his employment decisions. Nothing proffered by Plaintiffs vests the County with any meaningful policymaking authority over the Allegheny County Sheriff Office's law enforcement functions.[12] The sheriff, acting in his law enforcement capacity, is not a policymaker for the County. Plaintiff's respondeat superior theory of liability–i.e., that County is the entity and employer of the Allegheny County Sheriff's Office and therefore responsible for the actions of its deputy sheriffs –is not an appropriate basis for § 1983 municipal liability in this case.[13]

---

[11] Pennsylvania Courts have likewise confirmed that row officers, like the sheriff, have the exclusive power to both appoint and remove row employees, like deputy sheriffs. *Ricci v. Matthews*, 2 A.3d 1297, 1301 (Pa. Cmwlth. 2010), *aff'd sub nom. Behr v. Matthews*, 21 A.3d 1187 (Pa. 2011). Furthermore, the County has no authority to remove a sheriff, as that may be only effectuated through impeachment. 16 P.S. § 3450.

[12] The Court does not find it dispositive to its analysis that the County salary board has the authority to fix the number of deputy sheriff positions needed in the County or that the County pays salaries, as the conduct contested here relates to the Allegheny County Sheriff Office's law enforcement functions over which the County has absolutely no authority.

[13] Plaintiffs sued the Allegheny County Sheriff's Office in their Third Amended Complaint (ECF No. 71), and it was added as a Defendant on May 8, 2024. Summons was issued on May 9, 2024 to the Allegheny County Sheriff's Office. (ECF No. 76). The Court's careful review of the docket reveals that counsel has yet to enter an appearance for the Allegheny County Sheriff's

11

Further, Plaintiffs cannot sue the County for the actions of judges presiding in the Allegheny County Court of Common Pleas. The Court has already entered judgment in favor of the Judicial Defendants (Judges Ignelzi and McGinley) and against Plaintiffs. Additionally, the Pennsylvania constitution provides for the vesting of the Commonwealth's judicial power in a "unified judicial system" which includes all of the courts in Pennsylvania. Pa. Const. art. V, § 1. It also provides that the Pennsylvania Supreme Court will exercise "general supervisory and administrative authority" over the unified judicial system. Pa. Const. art. V, §§ 1, 2, and 10. All courts and agencies of the unified judicial system, including the Allegheny County Court of Common Pleas, are part of "Commonwealth government" and thus are state rather than local agencies. *See* Pa. Const. art. V, § 6(c); 42 Pa. C.S. § 102; 42 Pa. C.S. § 301. Under Pennsylvania law, it is clear that the state, and not the County, has authority over the conduct of the courts. The judicial branch of the Pennsylvania government is not a person for § 1983 purposes, and the judges of the Allegheny County Court of Common Please certainly could not have been acting as a policymaker for the County.

As noted in the previous section, all claims against Harper are being dismissed. Consequently, there is no individual with final policymaking authority named as a Defendant in this case who could be said to have acted on behalf of County. To state a *Monell* claim upon which relief can be granted, a complaint must include the identity of the municipal entity's final policymaker. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 135 & n. 11 (3d Cir. 2010) (requiring the plaintiff to "plead in some fashion" the identity of an individual with "final policy

---

Office, and the docket incorrectly lists counsel for the County, County Jail, and Harper as counsel for the Allegheny County Sheriff's Office. The Court questions whether the Allegheny County Sheriff's Office, a legally separate entity from the County, has actually been properly served with process as they have not appeared and defended.

making authority, as that is a key element of a *Monell* claim"); *see also Simmons v. City of Philadelphia*, 947 F.2d 1042, 1062 (3d Cir. 1991) (citing *Jett*, for the proposition that a *Monell* plaintiff must "identify officials with ultimate policymaking authority in the area in question"). In other words, Plaintiffs have failed to attribute final policymaking authority to any County official. All of Plaintiffs' § 1983 claims against the County fail on this basis.[14]

Plaintiffs have failed to allege a viable claim of municipal liability against the County. All claims against the County will be dismissed with prejudice as the Court finds amendment to be futile.

### D. The Court lacks jurisdiction under *Rooker-Feldman*.

As a final point, the Court notes that it abstains from deciding cases which would result in "unprecedent intrusion into the [state] judicial system." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 10 (1987). Recognizing the "importance to the States of enforcing the orders and judgments of their courts," the Supreme Court of the United States has counseled that a federal court must "stay its hand," when the federal action challenges "the very process by which those judgments were obtained." *Id.* at 13–14; *see also Juidice v. Vail*, 430 U.S. 327, 335 (1977) (finding abstention appropriate in federal case challenging a state court order directing arrest and confinement of the plaintiff as a penalty for contempt of court because "[a] State's interest in the contempt process, through which it vindicates the regular operation of its judicial system ... is surely an important interest" warranting abstention).

To the extent Plaintiffs are complaining about injuries caused to them by state court orders stemming from the enforcement of the judgment entered against them at No. GD-20-

---

[14] Plaintiffs' § 1983 claims also fail because the Third Amended Complaint does not allege any municipal policy or custom of the County, let alone one sufficient to give rise to a plausible claim of municipal liability against County.

007843, the *Rooker-Feldman* doctrine applies.[15] The harm alleged by Plaintiffs—their alleged physical and emotional injuries, Walter A. Bernard's removal from his residence, detention, and imprisonment, and the contempt proceedings—flows directly from the various orders issued by judges of the Allegheny County Court of Common Pleas and then effectuated and/or enforced by the Allegheny County Sherriff's Office (and its deputies), Harper, and the County Jail. Plaintiffs' allegations that Defendants violated their constitutional rights in the course of holding Walter A. Bernard in contempt, imprisoning him in the County Jail, and forcing Plaintiffs to pay the judgment (and then purging Walter A. Bernard's civil contempt), represent a clear and explicit invitation for this Court to "review and reject the state judgments." *Great W. Mining*, 615 F.3d at 166. The Court cannot do so. *See e.g., Middlebrook at Monmouth v. Liban*, 419 F. App'x 284, 285–86 (3rd Cir. 2011) (observing that federal courts "cannot review proceedings conducted by a state tribunal to determine whether it reached its result in accordance with law"). No matter how vehemently Plaintiffs dispute the lawfulness of the state court proceedings that precipitated this lawsuit, it is beyond the Court's purview to review those proceedings. It will not countenance Plaintiffs' attempts to have this Court review those proceedings by couching their claims as meritless § 1983 claims, which are inextricably intertwined with the state court's enforcement of the judgment against Plaintiffs, to obtain federal jurisdiction.

---

[15] The *Rooker-Felder* doctrine only applies where "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complains of injuries caused by the state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

Plaintiffs also want the Court to issue declaratory relief to address alleged violations of their rights during the now concluded state court proceedings.[16] Not only can the Court not do so because declaratory relief is prospective, *see CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 628 (3d Cir. 2013), but this claim for relief is "inextricably intertwined" with the state court proceedings. It would require the Court to conclude that the state courts made an incorrect legal and/or factual determination and would effectively reverse the state decision and/or void its ruling. *See Desi's Pizza, Inc. v. Wilkes–Barre*, 321 F.3d 411, 421 (3d Cir. 2003) (explaining when a claim for relief in a federal action is "inextricably intertwined" with a state court action). This is exactly the type of determination that the *Rooker–Feldman* doctrine prohibits, and Plaintiffs' request for declaratory relief is denied.

### IV.    CONCLUSION

For these reasons, the Court will grant the County, County Jail, and Harper's motion to dismiss, and terminate them as parties in this case. Orders of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

9-19-24
Date

---

[16] Plaintiffs' request for injunctive relief is moot as Walter A. Bernard was released from the Allegheny County Jail and his civil contempt purged after he complied with court orders. "A federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (quotations omitted).