IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WALTER A. BERNARD *and* WYNTON BERNARD,<br><br>*Plaintiffs*,<br><br>v.<br><br>PHILLIP A. IGNELZI, *et al.*<br><br>*Defendants* | Civil Action No. 2:23-cv-1463<br><br>Hon. William S. Stickman IV |

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiffs Walter A. Bernard and Wynton A. Bernard (collectively, "Plaintiffs") filed this action for monetary damages, as well as for injunctive and declaratory relief, alleging violations of their constitutional rights stemming from a case in the Allegheny County Court of Common Pleas, Pennsylvania – *9795 Perry Highway Management, LLC v. Walter Bernard, et al*, No. GD-20-007843. (ECF No. 1). Pending before the Court is Defendant Allegheny County Sheriff's Office ("Sheriff's Office") motion to dismiss Plaintiffs' third amended complaint ("Third Amended Complaint").[1] (ECF No. 104).

### I.   FACTUAL BACKGROUND

Wynton A. Bernard is a professional baseball player. Walter A. Bernard is an attorney who maintains law offices in the Eastern and Western Districts of Pennsylvania. (ECF No. 71, p. 3). Together they own a family entertainment escape room business, Amaze Me LLC, that was

---

[1] The Third Amended Complaint consists of fourteen counts. "Count II" is used in the numbering of two different counts, and there is no "Count XI." All the "John Doe" defendants are seemingly employees of Defendant Allegheny County Sheriff's Office. (ECF No. 71).

1

rendered inoperable due to COVID-19 governmental restrictions. (*Id.* at 5). Their landlord, 9795 Perry Highway Management, LLC ("Landlord"), initiated legal proceedings against them as a result of their failure to pay rent.[2] Specifically, on July 22, 2020, Landlord filed a Complaint in Confession of Judgment and Notice of Entry of Judgment by Confession against Plaintiffs.

Plaintiffs unsuccessfully sought to open or strike the judgment, and then unsuccessfully appealed to the Pennsylvania Superior and Supreme Courts. A review of the docket does not indicate that Plaintiffs posted a supersedeas bond at the initiation of the appeal. During the pendency of Plaintiffs' appeal, Landlord served post-judgment discovery in the aid of execution. Plaintiffs repeatedly ignored written discovery requests from Landlord and refused to participate in the discovery process. As a result, Landlord filed numerous motions to compel responses and for sanctions, which were granted on July 6, 2022, February 21, 2023 and April 27, 2023.[3] In an April 27, 2023 Order, Judge Phillip A. Ignelzi ("Judge Ignelzi") stated, ""[f]ailure to comply with this Order will result in both Walter Bernard and Wynton Bernard being held in Contempt of Court and being taken into custody by the Allegheny County Sheriff's Office and lodged at the Allegheny County Jail until such time as they purge themselves of Contempt." *See* Allegheny County Civil Docket No. GD-20-00784.

---

[2] The Court may consider matters of which it may take judicial notice including matters of public record, like public docket sheets, and it has done so in this case. It has reviewed the docket for No. GD-20-00784. *See https://dcr.alleghenycounty.us/Civil/LoginSearch.aspx?ReturnUrl=%2fCivil.* Pennsylvania's Unified Judicial System provides online access to appellate court docket sheets and the Court has taken notice of Plaintiffs' appellate proceedings related to No. GD-20-00784 docketed at No. 926 WDA 2021, No. 179 WAL 2022, No. 352 WDA 2023, and No. 754 WDA 2023. *See https://ujsportal.pacourts.us/CaseSearch.* The Court has relied upon the docketed information in the cases in recounting pertinent facts throughout this opinion.

[3] On March 29, 2023, Plaintiffs appealed from a March 21, 2023, order setting a hearing date to determine the amount of credit. The appeal was docketed in the Pennsylvania Superior Court at No. 352 WDA 2023. It was quashed on June 2, 2023, and on June 23, 2023, the Pennsylvania Superior Court denied Plaintiffs' application for reconsideration.

After Plaintiffs failed to respond to the discovery deadline, Walter A. Bernard was taken into custody on May 3, 2023, by Allegheny County sheriffs. Instead of being taken to the Allegheny County Jail, he was brought directly before Judge Ignelzi. A hearing was held during which Walter A. Bernard was given the option to either answer Landlord's discovery requests or pay the outstanding judgment. Judge Ignelzi ordered Walter A. Bernard released and gave Plaintiffs one final chance to provide the requested discovery or pay the outstanding judgment before a warrant was issued for their arrest. (ECF No. 71, pp. 16-20).

Plaintiffs again failed to respond to the discovery requests and Landlord again sought sanctions. Judge Ignelzi issued a warrant for Plaintiffs' arrest on May 16, 2023. (ECF No. 50-5).[4] On August 9, 2023, Walter A. Bernard was arrested and a contempt hearing was scheduled for August 21, 2023. (ECF No. 71, pp. 20-23).[5] On August 18, 2023, an emergency petition (filed on August 15, 2023) was presented to Judge Mary C. McGinley ("Judge McGinley") seeking Walter A. Bernard's release from imprisonment. Judge McGinley denied the motion. (*Id*. at 24-24). On August 21, 2023, a contempt hearing occurred before Judge Ignelzi. Plaintiffs ultimately agreed to settle the case by paying Landlord a portion of the judgment. Judge Ignelzi purged the contempt and Walter A. Bernard was released from custody. (*Id*. at 24-25).

---

[4] This order was not docketed until June 5, 2023. On July 5, 2023, Plaintiffs appealed the order, and it was docketed in the Pennsylvania Superior Court at No. 754 WDA 202. The appeal was dismissed on May 8, 2024, as moot. Reargument was denied on July 18, 2024.

[5] Plaintiffs initiated their case in this court on August 12, 2023. (ECF No. 1). They are now on their Third Amended Complaint. The Court has already dismissed all claims against the Judicial Defendants, Judges Ignelzi and McGinley, and entered judgment in their favor. (ECF Nos. 61-63, 90-91). It also dismissed all claims against Defendants Allegheny County, Allegheny County Jail, and Orlando Harper, and entered judgment in their favor. (ECF Nos. 95 and 96). The only remaining named Defendant is the Sherriff's Office.

## II. STANDARD OF REVIEW

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

### III. ANALYSIS

Count XIII is the only claim that Plaintiffs brought against the Sheriff's Office. It is titled, "Alter Ego," and seemingly asserts no clear cause of action. No specific allegations of wrongdoing are made as to the Sheriff's Office. To the best of the Court's understanding, Plaintiffs are of the opinion that the Sheriff's Office acted as an alter ego of Allegheny County and is therefore liable for claims brought under 42 U.S.C. § 1983 against Allegheny County.[6] However, all claims against Allegheny County have been dismissed. For the following reasons, Count XIII against the Sheriff's Office will be dismissed as well.

The Court has already determined that Allegheny County and the Sheriff's Office are not alter egos of each other and that Plaintiffs have proceeded under a misunderstanding as to the legal status of the governmental entities they named as defendants. In discussing this matter in its September 19, 2024, Memorandum Opinion, the Court noted:

> The County and the Allegheny County Sheriff are legally distinct entities. In Pennsylvania, the office of sheriff is a constitutional one: "[c]ounty officers shall consist of ... sheriffs...." Pa. Const. art. IX, § 4. Although the Pennsylvania Constitution recognizes the sheriff's office, it does not define its powers. There are two statutory provisions which specifically reference the sheriff's duties. First, sheriffs and deputy sheriffs are required to perform all those duties authorized or imposed on them by statute. 13 P.S. § 40. Second, under the Pennsylvania Judicial Code, "[t]he sheriff, either personally or by deputy, shall serve process and execute orders directed to him pursuant to law." 42 Pa. C.S. § 2921. Thus, the Pennsylvania statutes expressing a sheriff's duties address court-related functions. The sheriff also has common law power and authority to arrest without a warrant for all crimes committed in his presence. *Commonwealth v. Leet*, 641 A.2d 299 (Pa. 1994). The Administrative Code of Allegheny County further specifies that the Allegheny County Sheriff's Office is an "Independently elected

---

[6] By its terms, § 1983 does not create a substantive right; it merely provides a method for vindicating federal rights conferred by the United States Constitution and the federal statutes that it describes. *Baker v. McCollan*, 443 U.S. 137 (1979). In order to establish a claim under § 1983, a plaintiff must demonstrate (1) a violation of a right secured by the Constitution and the laws of the United States and that (2) the alleged deprivation was committed by a person acting under color of state law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999).

> County Official[ ]," Allegheny Cty. Admin. Code § 5-201.03, vested with its own powers, duties and responsibilities including the "hiring, supervising and terminating of all personnel within their respective offices," § 5-601.02. *See also Shim v. Allegheny County, Pa.*, No. 23-393, 2024 WL 1095811, *1 (W.D. Pa. Mar. 13, 2024) (holding that Allegheny County "Sheriff's Office is an 'independently elected County Official[],' vested with its own 'powers, duties, and responsibilities,' regarding 'hiring, supervising, and terminating of all [sic] personnel within their respective offices,' not Allegheny County."); *Day v. Westmoreland Cty.*, 2021 WL 5015774, at *6 (W.D. Pa. Oct. 28, 2021) (applying the factors set forth in *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992) and holding, as a matter of law, that the county was not a joint employer based on the Sheriff's Office's statutory authority).[ ]
>
> Plaintiffs have not alleged that the County controlled the daily activities of the Allegheny County Sheriff's Office. Nor could they because the County cannot appoint or remove the sheriff, and it has no ability to overrule his exclusive authority in his employment decisions. Nothing proffered by Plaintiffs vests the County with any meaningful policymaking authority over the Allegheny County Sheriff Office's law enforcement functions.[] The sheriff, acting in his law enforcement capacity, is not a policymaker for the County. Plaintiff's respondeat superior theory of liability–i.e., that County is the entity and employer of the Allegheny County Sheriff's Office and therefore responsible for the actions of its deputy sheriffs –is not an appropriate basis for § 1983 municipal liability in this case.

(ECF No. 95, p. 10-11). As the Court previously ruled, Plaintiffs' theory of liability – *i.e.*, that the Sheriff's Office is an alter ego of Allegheny County and responsible for its actions – is not an appropriate basis for § 1983 liability.

Plaintiffs now concede that "Allegheny County Sheriff's Office is a distinct legal entity from the other named Defendants." (ECF No. 109, p. 6). But they go on to argue that they have come forth with "substantial allegations of misconduct" by the Sheriff's Office and point to facts in their Third Amended Complaint regarding the arrest and imprisonment of Plaintiff Walter A. Bernard. They believe the actions taken against Plaintiff Walter A. Bernard by the Sheriff's Office were done without a facially valid arrest warrant. (ECF No. 109, pp. 6-9). None of these claims were advanced in Count XIII; all Plaintiffs alleged therein was their alter ego theory of liability for the actions of Allegheny County. A complaint may not be amended by the briefs in

opposition to a motion to dismiss. *Com. of Pa. ex rel. Zimmerman v. PepsiCo*, 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted); *see also Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007). Thus, to the extent Plaintiffs try to further amend their Third Amended Complaint through the adding of claims and facts in response to the motion to dismiss, their efforts are legally unavailing and are rejected by the Court. Furthermore, the Court finds further amendment to be futile. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (a court may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility); *see also* 3 James Wm. Moore et al., Moore's Federal Practice ¶ 15.15 (3d ed. 2024) ("An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss.").

Assuming *arguendo* that Plaintiffs had actually brought a § 1983 claim against the Sheriff's Office, it fails for a multitude of reasons.

First, Plaintiffs have failed to allege a viable claim of municipal liability against the Sheriff's Office.[7] To state a *Monell* claim upon which relief can be granted, a complaint must

---

[7] A municipality or other local government may be liable under § 1983 if it subjects a person to a deprivation of rights or causes a person to be subjected to such a deprivation. *See Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 692 (1978). Under § 1983, a local government is responsible only for "their own illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (citation omitted). It is not vicariously liable under § 1983 for their employees' actions. Thus, the County may be held liable under § 1983 only when its policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. *See Monell*, 436 U.S. at 694. Within this framework, the United States Court of Appeals for the Third Circuit has clarified that there are three ways a municipality can be liable for the torts of its employees. *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005). "First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy; third, the municipality will be liable if an

7

include the identity of the municipal entity's final policymaker. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 135 & n. 11 (3d Cir. 2010) (requiring the plaintiff to "plead in some fashion" the identity of an individual with "final policy making authority, as that is a key element of a *Monell* claim"); *see also Simmons v. City of Philadelphia*, 947 F.2d 1042, 1062 (3d Cir. 1991) (stating that a plaintiff advancing a *Monell* claim must "identify officials with ultimate policymaking authority in the area in question"). There is no individual with final policymaking authority named in this case who could be said to have acted on behalf of the Sheriff's Office. In other words, Plaintiffs have failed to attribute final policymaking authority to any official of the Sherriff's Office. A § 1983 claim against the Sherriff's Office fails on this basis. It also fails on the basis that Plaintiffs do not allege that a policy or custom of the Sheriff's Office caused a violation of their constitutional rights.

Second, the action attributed to the Sherriff's Office–arresting and imprisoning Plaintiff Walter A. Bernard in the county jail–was performed pursuant to facially valid orders of court. "[A]bsolute immunity attaches to those who perform functions integral to the judicial process."[8] *Williams v. Consovoy*, 453 F.3d 173, 178 (3d Cir. 2006) (citation omitted). Quasi-judicial immunity extends to acts authorized by court order. *See Russell v. Richardson*, 905 F.3d 239, 250 (3d Cir. 2018); *see also Nemeth v. Office of Clerk of Superior Ct. of New Jersey*, 837 F. App'x 924, 928 (3d Cir. 2020) (holding that a sheriff was entitled to quasi-judicial immunity for

---

official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes." *Id.* (internal citations omitted).

[8] A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts. *Mireles v. Waco*, 502 U.S. 9, 12 (1991). Judicial immunity applies even if the action "was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted 'in the clear absence of all jurisdiction.'" *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)).

executing a facially valid deed of foreclosure); *Villarreal v. New Jersey*, 803 F. App'x 583, 588 (3d Cir. 2020) ("Law enforcement officials executing a facially valid court order are protected by absolute quasi-judicial immunity.") (internal quotation marks and citation omitted)); *Gigliotti v. Redevelopment Auth. of City of New Castle*, 362 F. Supp. 764, 766 (W.D. Pa. 1973); aff'd, 492 F.2d 1238 (3d Cir. 1974) (holding that a sheriff executing a writ in connection with an eminent domain proceeding was acting at the direction of the court and could not be sued under § 1983). Actions taken by a sheriff pursuant to orders or writs from a Pennsylvania Court of Common Pleas can be protected by quasi-judicial immunity. *See e.g., McArdle v. Tronetti*, 961 F.2d 1083, 1084-85 (3d Cir. 1992) (deciding that a person acted as an "arm of the court" when they acted pursuant to an Erie County Court of Common Pleas judicial order); *see also Addlespurger v. Corbett*, No. 2:09cv1064, 2011 WL 3418975, at *11 (W.D. Pa. Aug. 1, 2011), aff'd, 461 F. App'x 82 (3d Cir. 2012) (finding "quasi-judicial immunity for all actions taken as part of the official functions of the Court of Common Pleas" of Allegheny County).

Here, the Sheriff's Office acted pursuant to facially valid orders of court.[9] No viable allegations exist that the Sheriff's Office violated the Constitution or internal policies in executing the orders. Nothing about what occurred was an inappropriate exercise of the Sheriff Office's functions. All of Plaintiffs' appeals to the Pennsylvania appellate courts regarding what

---

[9] Civil contempt orders in Pennsylvania are judicial acts. The purpose of a civil contempt order is to coerce the contemnor to comply with a court order. *See Gunther v. Bolus*, 853 A.2d 1014, 1016 (Pa. Super. 2004). The law is well-established in Pennsylvania that "[c]ourts possess an inherent power to enforce their orders by way of the power of contempt." *Com., Dep't of Env'tl Prot. v. Cromwell Twp., Huntingdon Cnty.*, 32 A.3d 639, 653 (Pa. 2011) (quoting *Commonwealth v. Bowden*, 838 A.2d 740, 760 (Pa. 2003)). "Courts have broad discretion in fashioning and administering a remedy for civil contempt." *Mulligan v. Piczon*, 739 A.2d 605, 611 (Pa. Cmwlth. 1999), aff'd, 779 A.2d 1143 (Pa. 2001) (citation omitted). Civil confinement pursuant to a civil contempt order is a valid method of assuring compliance with judgments. *Tauro v. Allegheny Cnty.*, 371 F. App'x 345, 348 (3d Cir. 2010) (citing *Chadwick v. Janecka*, 312 F.3d 597, 613 (3d Cir. 2002)).

9

occurred have been rejected. Of note, Walter A. Bernard was released from the Allegheny County Jail and his civil contempt purged after he complied with court orders. For these reasons, the Court holds that quasi-judicial immunity applies to the Sherriff's Office as it was acting as an arm of the state court during civil contempt proceedings in the Allegheny County Court of Common Pleas at *9795 Perry Highway Management, LLC v. Walter Bernard, et al*, No. GD-20-007843.

    Third, the Court once again notes:

> As a final point, the Court notes that it abstains from deciding cases which would result in "unprecedent intrusion into the [state] judicial system." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 10 (1987). Recognizing the "importance to the States of enforcing the orders and judgments of their courts," the Supreme Court of the United States has counseled that a federal court must "stay its hand," when the federal action challenges "the very process by which those judgments were obtained." *Id.* at 13–14; *see also Juidice v. Vail*, 430 U.S. 327, 335 (1977) (finding abstention appropriate in federal case challenging a state court order directing arrest and confinement of the plaintiff as a penalty for contempt of court because "[a] State's interest in the contempt process, through which it vindicates the regular operation of its judicial system ... is surely an important interest" warranting abstention).
>
> To the extent Plaintiffs are complaining about injuries caused to them by state court orders stemming from the enforcement of the judgment entered against them at No. GD-20-007843, the *Rooker-Feldman* doctrine applies. The harm alleged by Plaintiffs—their alleged physical and emotional injuries, Walter A. Bernard's removal from his residence, detention, and imprisonment, and the contempt proceedings—flows directly from the various orders issued by judges of the Allegheny County Court of Common Pleas and then effectuated and/or enforced by the Allegheny County Sherriff's Office (and its deputies), Harper, and the County Jail. Plaintiffs' allegations that Defendants violated their constitutional rights in the course of holding Walter A. Bernard in contempt, imprisoning him in the County Jail, and forcing Plaintiffs to pay the judgment (and then purging Walter A. Bernard's civil contempt), represent a clear and explicit invitation for this Court to "review and reject the state judgments." *Great W. Mining*, 615 F.3d at 166. The Court cannot do so. *See e.g., Middlebrook at Monmouth v. Liban*, 419 F. App'x 284, 285–86 (3rd Cir. 2011) (observing that federal courts "cannot review proceedings conducted by a state tribunal to determine whether it reached its result in accordance with law"). No matter how vehemently Plaintiffs dispute the lawfulness of the state court proceedings that precipitated this lawsuit, it is beyond the Court's purview to review those proceedings. It will not countenance Plaintiffs' attempts to have this Court

review those proceedings by couching their claims as meritless § 1983 claims, which are inextricably intertwined with the state court's enforcement of the judgment against Plaintiffs, to obtain federal jurisdiction.

(ECF No. 95, pp. 13-14) (footnote omitted). The Court has already denied (1) Plaintiffs' request for injunctive relief as moot since Walter A. Bernard was released from the Allegheny County Jail and his civil contempt purged after he complied with court orders and (2) Plaintiffs' request for declaratory relief. (*Id.* at 15).

The only claim against the Sheriff's Office, Count XIII, will be dismissed with prejudice.

### IV. CONCLUSION

For these reasons, the Court will grant the Sheriff Office's motion to dismiss. Orders of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

\_\_1/27/25_____
Date